ALYESKA SKI CORPORATION, Appellant,

v.

Phil R. HOLDSWORTH, as Commissioner of the Department of Natural Resources of the State of Alaska, and Roscoe E. Bell, as Director of the Division of Lands of the State of Alaska, and Inlet Company, Inc., Appellees.

No. 620.

Supreme Court of Alaska.

April 27, 1967.

Kenneth R. Atkinson, of Atkinson, Wade & Conway, Anchorage, for appellant.

Warren C. Colver, Atty. Gen., Juneau, Dorothy Awes Haaland, Asst. Atty. Gen., Anchorage, for appellees Holdsworth & Bell.

Nissel A. Rose, Anchorage, for appellee Inlet Co.

## OPINION

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

This appeal involves questions of first impression pertaining to the reviewability of decisions made by the Director of the Division of Lands and the Commissioner of Natural Resources under the leasing of lands provisions of the Alaska Land Act [1] and the standing of an unsuccessful bidder to obtain review of such decisions.

In its complaint appellant alleged that appellee Bell, the Director of the Division of Lands, offered to lease certain lands of the State of Alaska for 55 years at public auction to the highest qualified bidder pursuant to the Alaska Land Act. Appellant further alleged that it was a qualified bidder at the auction and that it offered several bids culminating in a bid of $10,200 annual rental. According to appellant's allegations, the only other bidder at the auc-

tion was Wayne J. Cherrier (who purportedly acted on behalf of appellee Inlet). In regard to Cherrier's bid, appellant asserted Cherrier had failed to file a development plan with appellee Bell as required by the notice of auction; that Cherrier omitted to file any evidence of his authority to act for appellee Inlet; that Cherrier's check, which was tendered at the close of the bidding, was neither cash, certified check, money order, nor cashier's check; and that Cherrier's bid of $10,400 annual rental was declared by appellee Bell to be the highest bid. Appellant further alleged that it had protested the foregoing and had appealed the director's determination of the highest bidder to Phil R. Holdsworth, the Commissioner of Natural Resources. The commissioner thereafter rendered a decision in which the director's determination was affirmed.

Appellant alleged that if appellees Bell and Holdsworth were not restrained from entering into a lease with appellee Inlet, appellant would, to its irreparable injury, be illegally deprived of its right to obtain a lease to the land in question. After contending that it had exhausted its administrative remedies, appellant requested the superior court to issue a temporary restraining order and preliminary injunction against appellees Bell and Holdsworth

enjoining and restraining them from executing and entering into said or any lease with Wayne J. Cherrier, Inlet Co., Inc., or any person other than plaintiff, as a result of the lease auction of December 1, 1964, and that upon final hearing said injunction be made permanent * * *.

The superior court then granted appellant's ex parte application for a temporary restraining order. [2] Thereafter, appellees Bell and Holdsworth moved, pursuant to Civil Rule 12(b) (6), to dismiss appellant's complaint on the grounds that it failed to state a cause of action. In support of their

---

1. AS 38.05.005–38.05.370 and in particular AS 38.05.070–38.05.105.

2. After the temporary restraining order was issued, appellee Inlet moved to intervene as a party defendant. This motion was granted.

motion, appellees relied on the fact that the published notice of land lease auction had stated that the Division of Lands of the Department of Natural Resources "reserves the right to reject any and all bids." Appellees' legal position in support of their motion to dismiss was that the "universal" rule which is followed in the United States "is that a bidder or potential bidder on a public contract is without standing to bring suit to enjoin the award of a contract to a third party or to have the contract set aside and awarded to him." Appellees argued that highest-responsible-bidder statutes, and administrative rules and regulations promulgated thereunder, are exclusively for the benefit of the general public and not for unsuccessful bidders, and do not create a right of action in favor of an unsuccessful bidder.[3]

In opposition to appellees' motion to dismiss, appellant argued that the highest-responsible-bidder line of authorities, typified by Perkins v. Lukens Steel Co.[4] relied upon by appellees, is inapplicable. Appellant contended that the case at bar is distinguishable from Perkins in that it involved "the disposal by the State of some of its natural resources; not the purchase by the State of supplies or public improvements under its housekeeping powers or under responsible bidder statutes." Appellant also argued that by virtue of certain constitutional, statutory, and regulatory provisions it had the right "as an aggrieved bidder, to insist that no lease be issued except under the conditions and limitations prescribed" by Alaska's laws.[5]

As to its standing to bring the action, appellant's position was that "it has standing to sue on general legal principles, and as an aggrieved bidder to whom Section 17 of Article VIII of the Alaska Constitution applies, and as an interested person aggrieved by the neglect of the defendants to comply with the law of Alaska regarding disposal of State land."[6] Additionally, appellant claimed that it was the only qualified bidder at the auction within the meaning of the invitation to bid and pertinent Alaska law, and that in order for appellees to bring the case within the Perkins rule they must prove another qualified bidder actually bid at the lease auction.

Appellant then filed a motion for leave to file an amended complaint. The amended complaint proposed an additional cause of action seeking declaratory relief in addition to the injunctive relief which had been previously requested.[7] Appellant's

---

3. Appellees also argued that a bid on a public contract is merely an offer which, if not accepted by the government, results in no contractual rights to the unsuccessful bidder.

 While the motion was pending, appellee Inlet filed an answer which contained the defense that appellant's complaint failed to state a claim upon which relief could be granted. Appellee Inlet joined in the motion to dismiss and its memorandum in support of the motion to dismiss paralleled that of appellees Bell and Holdsworth.

4. 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940).

5. In support of this contention appellant cited sections 2, 6, 8, 10, and 17, article VIII of the Alaska constitution; sections 38.05.035(a) (6) & (14); 38.05.070(a); 38.05.075; 38.05.020 of the Alaska statutes; and title 11, sections 302.02, 302.15, 302.16, 302.17, 302.18 of the Alaska Administrative Code of 1965.

6. Section 17, article VIII of the Alaska constitution provides:

 Uniform Application. Laws and regulations governing the use or disposal of natural resources shall apply equally to all persons similarly situated with reference to the subject matter and purpose to be served by the law or regulation.

7. In its prayer for relief pertaining to the declaratory judgment cause of action, appellant requested:

 That the Court declare that plaintiff was the only qualified bidder at the lease auction referred to in the complaint, and that any lease issued as a result of said auction must be issued to plaintiff, or that no lease may be issued by the defendants to the defendant in intervention.

motion to amend was opposed by appellees Bell and Holdsworth on the basis that neither they nor the State of Alaska were obligated to issue a lease to any one, and that since the State of Alaska had not been made a party and could not be sued without its consent, declaratory relief was improper. The superior court granted appellees' motion to dismiss the complaint and allowed further briefs on the question of whether an amended complaint should be permitted.[8]

After hearing additional oral argument, the superior court entered an order which dismissed appellant's complaint, denied appellant's motion to amend its complaint, dissolved the temporary restraining order (which had been extended by stipulation of the parties), and exonerated the bond appellant had filed in conjunction with its application for temporary restraining order. In entering this order it appears the trial judge was of the opinion that appellant lacked the requisite standing to maintain either cause of action. As to the amendment requesting declaratory relief, the trial judge was of the view that the State of Alaska was an indispensable party since it owned the land in question, and because the state was not a party to the litigation, effective relief could not be granted to appellant.[9] As to both causes of action the court noted appellant had not alleged that appellees Bell or Holdsworth were guilty of fraud, collusion, or deceit in the manner in which the auction was conducted, or in their determinations that appellee Inlet was the highest bidder. Appellant then appealed to this court from the foregoing order of the superior court.[10]

As we indicated earlier, resolution of the issues in this appeal concerns determination of questions pertaining to availability of judicial review and standing. Although these concepts have a tendency to merge and at times have not received independent treatment in the decisions, we are of the belief that it will assist in analysis of these questions if separate treatment is accorded them.

As to the question of the reviewability of a decision of the Director of the Division of Lands, or that of the Commissioner of Natural Resources, made under the leasing provisions of the Alaska Land Act, we are of the opinion that section 10, article VIII of the Alaska constitution is of paramount significance. In this section of the natural resources article of Alaska's constitution, it is provided that:

> No disposals or leases of state lands, or interests therein, shall be made without prior public notice and other safeguards of the public interests as may be prescribed by law.

In accordance with this constitutional provision, the legislature enacted the Alaska Land Act. AS 38.05.075 of this act in part

8. At the time appellees' motion to dismiss was granted the trial judge stated:
 The Court is of the opinion that there is not sufficient allegations in the complaint of which the Court can take jurisdiction in this matter, and that no fraud or collusion is raised and the mere fact that the plaintiff in this case was a bidder and unsuccessful, and [has] * * * alleged some technical defects in the handling of [the bidding] * * *, in the Court's opinion, is not sufficient, therefore, the Motion to Dismiss is granted as to the original complaint.

9. On this point the court stated:
 Now, I think it's conceded by the parties that the only way the Court can give some relief to these parties, which would be any * * * final relief to them would be * * * if the Court had held that their bid was the bid that had to be accepted by the State. On the pleadings I don't see how the Court could arrive at any other. If we granted the first request [and] * * * declare none of the bids be accepted, then, of course, I assume, under the laws and regulations, that they would have to put it up for bid again. That would not insure anyone any rights in this case as I see the matter * * *.

10. Appellant did not avail itself of the provisions of Supreme Court Rule 7(d) (1) which permits the issuance of a stay upon the filing of an appropriate supersedeas bond.

provides, in regard to leasing procedures, that:

> The leasing shall be made at public auction to the highest qualified bidder as determined by the director. An aggrieved bidder may appeal to the commissioner within five days for a review of the director's determination.[11]

The Alaska Land Act also authorized the Commissioner of Natural Resources to "establish reasonable procedures and adopt reasonable rules and regulations necessary to carry out" the purposes of the act.[12] Under this statutory authorization, the commissioner promulgated the following regulation regarding leasing procedures and appeals thereunder:

> An aggrieved bidder may appeal the Director's determination of the apparent high bidder * * * to the Commission-

er, through the Director, within a period of five working days following such determination, for a review of the Director's decision. * * * The Commissioner's ruling shall be final, but without prejudice to any other right or rights the aggrieved bidder may have.[13]

Appellant concedes that our statutes do not contain any "express * * * provision for judicial review of an administrative decision of the Division of Lands or of the Department of Natural Resources, as to functions under the Alaska Land Act in the leasing of state lands." More particularly, appellant admits that the judicial review portions of the Administrative Procedure Act were not made specifically applicable to leasing procedures conducted by the Division of Lands under the Alaska Land Act.[14] On this point appellant fur-

---

11. AS 38.05.075 further provides:
 The leasing shall be conducted by the director, or his representative, and the successful bidder shall deposit the first year's rental, or that portion of it which the commissioner requires, in accordance with his bid. The director or his representative shall immediately issue a receipt containing a description of the land or interest leased, the price bid, and terms of the lease. The receipt shall be acknowledged in writing by the bidder. A lease, on a form approved by the attorney general, shall be signed by the lessee and, upon approval by the commissioner, shall be signed by the director.
 Further safeguards established by the Alaska Land Act are as follows: AS 38.-05.070(c) provides in part that "A lease may be issued for a period up to 55 years, if it appears to be in the best interests of the state and if the commissioner approves." AS 38.05.085 provides in part that "The lease shall require advance payment of the annual rent or portion of it as the director, with the approval of the commissioner, requires. * * * The director may, with the approval of the commissioner, impose conditions, limitations and terms which he considers necessary and proper to protect the interests of the state." AS 38.05.105 provides that "the annual rental payment is subject to adjustment at five-year intervals * * *."

12. AS 38.05.020(b) (1). This section further provides that "All rules and regulations adopted by the commissioner shall be adopted under the Administrative Procedure Act (AS 44.62)."
 AS 38.05.035(a) (6) provides:
 The director shall
 *　　*　　*　　*　　*
 under the conditions and limitations imposed by law and the commissioner, issue * * * leases * * * disposing of available lands * * * or any interests in them * * *.

13. 11 Alaska Adm.Code § 302.18 (1965).

14. In regard to administrative adjudications, AS 44.62.330(a) of the Administrative Procedure Act provides in part:
 The procedure of the state boards, commissions, and officers listed in this subsection * * * shall be conducted under the provisions of §§ 330–630 of this chapter. This procedure, including, but not limited to * * * judicial review and scope of judicial review * * * shall be governed by this chapter, notwithstanding similar provisions in the statutes dealing with the state boards, commissions, and officers listed. Where indicated, the procedure that shall be conducted under §§ 330–630 of this chapter is limited to named functions of the agency.
 *　　*　　*　　*　　*
 Division of Lands under Alaska Land Act where applicable

ther argues that it is not clear whether AS 44.62.560(a) and (e) [15] of the Administrative Procedure Act, which pertain to judicial review, apply to the case at bar. Appellant reasons from the foregoing that since judicial review is not explicitly prohibited, and since all disposals of state lands must be made in accordance with law "this court is free to choose whether or not to allow judicial review * * *." [16]

Appellees contend that the question is not whether the Administrative Procedure Act applies to the Alaska Land Act generally, but whether it applies to leasing procedures under AS 38.05.075. Appellees' position is that it does not, since AS 38.05.075 provides for a different type of review, namely, an appeal directly to the commissioner to obtain review of the director's determination.[17] In regard to section 302.18, title 11 of the Alaska Administrative Code, appellees state:

> This clearly anticipates that in most cases the commissioner's decision shall be final, but does leave the door open for the unusual case where the aggrieved bidder may for some reason have other rights appellate or otherwise. But to say that all aggrieved bidders have the right to appeal would make meaningless the statement that the commissioner's ruling shall be final.

■ We hold that determinations of the Director of the Division of Lands and the Commissioner of Natural Resources made under AS 38.05.075 of the Alaska Land Act, and regulations promulgated thereunder, are subject to judicial review. We reach this conclusion in light of the text of section 10, article VIII of the Alaska constitution which prohibits leasing of state owned lands unless made pursuant to public notice and other limitations imposed by law. This article of our constitution reflects the framers' recognition of the importance of our land resources and of the concomitant necessity for observance of legal safeguards in the disposal or leasing of state lands. Neither the minutes of our constitutional convention nor the legislature history of the Alaska Land Act demonstrate that it was intended to make unreviewable leasing decisions of the director and the commissioner.[18] We interpret the provisions of AS 38.05.075, which accord an aggrieved bidder the right of an administrative apppeal, as evidence of the legislature's awareness of the necessity that adherence to legal procedures concerning the leasing of state lands must be insured. AS 38.05.075's provisions pertaining to an aggrieved bidder's right of appeal do not manifest a clear intent that this administrative appeal was intended to be the full extent of review available to an aggrieved bidder. This

---

15. AS 44.62.560(a) of the Administrative procedure Act reads in part:
 Judicial review by the superior court of a final administrative order may be had by filing a notice of appeal in accordance with the applicable rules of court governing appeals in civil matters.
 We note that AS 44.62.560(e) of the Administrative Procedure Act states:
 The superior court may enjoin agency action in excess of constitutional or statutory authority at any stage of an agency proceeding. If agency action is unlawfully withheld or unreasonably withheld, the superior court may compel the agency to initiate action.

16. In arguing that this court should hold the administrative determinations in question reviewable, appellant cites 4 Davis,

Administrative Law § 28.21 (Supp.1965), where the author says:
 The most important proposition about the law of unreviewability remains: The presumption of reviewability controls unless it is rebutted by affirmative indication of legislative intent in favor of unreviewabililty, or by some special reason for unreviewability growing out of the subject matter or the circumstances.

17. As to the purpose of the review provisions of AS 38.05.075, appellees state that it was desired to give the aggrieved bidder "some opportunity for review, rather than having the director's decision absolute."

18. As is perhaps usual, the legislative history of AS 38.05.075 is uninformative.

view has received partial recognition in the concluding sentence of the regulation which provides that although the commissioner's ruling on appeal shall be final, it is "without prejudice to any other right or rights the aggrieved bidder may have." [19] Admittedly, this is a penumbral area of law, yet it is one in which our courts are not precluded from carrying out their historic role in development of the common law.[20] In light of the constitutional, statutory, and regulatory provisions alluded to, we conclude that it was not intended that Alaska's courts be divested of their constitutionally vested duty to insure compliance with the laws of Alaska.[21] We therefore hold that the administrative determinations in question are judicially reviewable, and that the provisions of the Administrative Procedure Act relating to judicial review and scope of review should govern this proceeding.[22] Our holding makes unnecessary resolution of the question of whether the decisions involved herein are judicially reviewable under the provisions of Rule 21(a) and (b) of the District Court Civil Rules.[23]

This leads us to the question of whether appellant possessed the requisite standing to seek review in the superior court. We previously mentioned that appellees rely on the rule enunciated in Perkins v. Lukens Steel Co.[24] in support of their position that appellant lacked standing. In the *Perkins* case the Supreme Court of the United States said:

Section 3709 of the Revised Statutes requires for the Government's benefit that its contracts be made after public advertising. It was not enacted for the protection of sellers and confers no enforceable rights upon prospective bidders. 'The United States needs the protection of publicity, form, regularity of returns and affidavit * * * in order to prevent possible frauds upon it by officers. A private person needs no such protection against a written undertaking signed by himself. The duty is imposed upon the officers of the government, not upon him.' That duty is owing to the Government and to no one else.

Like private individuals and businesses, the Government enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon

---

19. Regulation cited note 13 supra and accompanying text.

20. As to the common law of reviewability, see 4 Davis, Administrative Law §§ 28.03–07 (1958); Jaffe, Standing To Secure Judicial Review: Private Actions, 75 Harv.L.Rev. 255 (1961).

21. Section 1, article IV of the Alaska constitution provides in part that:
 The judicial power of the State is vested in a supreme court, a superior court, and the courts established by the legislature. The jurisdiction of courts shall be prescribed by law.
 AS 22.10.020(a) provides in part that:
 The superior court has jurisdiction in all matters appealed to it for a subordinate court, or administrative agency when appeal is provided by law.

22. See AS 44.62.560 and AS 44.62.570.

23. Dist.Civ.R. 21(a) provides:
 When Filed. An aggrieved party may petition the superior court for review of any order or decision of * * * an administrative agency where there is no appeal or other plain, speedy or adequate remedy, and where the * * * administrative agency appears to have exercised his or its functions erroneously or to have exceeded his or its jurisdiction, to the injury of some substantial right of such party.
 Relief heretofore available by writs of review, certiorari, mandamus, prohibition, and other writs may be obtained by petition for review under the practice prescribed in these rules.
 Dist.Civ.R. 21(b) (3) provides:
 Where the * * * administrative agency has so far departed from the accepted and usual course of * * * administrative proceedings, as to call for the superior court's power of supervision and review.
 Appellees take the position that appellant does not come within this rule because it is not an aggrieved party (due to its lack of standing to sue), and further because no substantial rights of appellant were shown to be injured.

24. 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940).

which it will make needed purchases. Acting through its agents as it must of necessity, the Government may for the purpose of keeping its own house in order lay down guideposts by which its agents are to proceed in the procurement of supplies, and which create duties to the Government alone. It has done so in the Public Contracts Act. That Act does not depart from but instead embodies the traditional principle of leaving purchases necessary to the operation of our Government to administration by the executive branch of Government, with adequate range of discretion free from vexatious and dilatory restraints at the suits of prospective or potential sellers. It was not intended to be a bestowal of litigable rights upon those desirous of selling to the Government; it is a self-imposed restraint for violation of which the Government—but not private litigants—can complain.[25]

*Perkins* has been consistently adhered to by the federal courts. See United States v. Gray Line Water Tours, 311 F.2d 779, 781–782 (4th Cir. 1962); St. Louis Amusement Co. v. FCC, 104 U.S.App.D.C. 45, 259 F.2d 202, 203–204 (D.C.Cir.), cert. denied, 358 U.S. 894, 79 S.Ct. 154, 3 L.Ed.2d 121 (1958); Friend v. Lee, 95 U.S.App.D.C. 224, 221 F.2d 96, 100 (1955);[26] United States ex rel. Brookfield Construction Co. Inc. v. Stewart, 234 F.Supp. 94, 100–101 (D.D.C.1964); Joseph Rugo, Inc. v. Henson, 190 F.Supp. 281 (D.Conn.1960); Robert Hawthorne, Inc. v. United States Dep't of Int., 160 F.Supp. 417, 421 (E.D.Pa.1958); Heyer Prods. Co. v. United States, 140 F. Supp. 409, 412 (Ct.Cl.1956). Results similar to *Perkins* have been reached by state courts. See Townsend v. McCall, 262 Ala. 554, 80 So.2d 262, 265 (1955); Fetters v. Mayor & Council of Wilmington, 31 Del.Ch. 338, 73 A.2d 644, 647 (1950); Waszen v. Atlantic City, 1 N.J. 272, 63 A.2d 255, 256 (1949).[27]

We hold that appellant, as an aggrieved bidder under AS 38.05.075 and under the allegations of its first cause of action seeking injunctive relief, has standing to obtain review of determinations of the Director of the Division of Lands and the Commissioner of Natural Resources.[28]

---

25. Id. at 126–127, 60 S.Ct. at 876, 84 L. Ed. at 1114–1115 (footnotes omitted).

26. In the *Friend* case the court said:
Plaintiff contends that the contract between the defendants and Avis is illegal on the ground that it was entered into without previous advertising for proposals, as 41 U.S.C.A. § 5 requires. But assuming *arguendo* that the statute is applicable and may have been violated, plaintiff, nevertheless, has no standing to sue to invalidate the contract. Statutes regulating the contracting procedures of officers of the Federal Government are enacted solely for the benefit of the Government and confer no enforceable rights upon persons dealing with it. Perkins v. Lukens Steel Co., 1940, 310 U.S. 113, 126, 60 S.Ct. 869, 84 L.Ed. 1108. In consequence, plaintiff cannot contest the award of the contract to Avis, either as a bidder or in his capacity as a citizen generally.
See also the *Gray Line Water Tours* case. We note that both of these decisions applied *Perkins* to situations where the government was neither purchasing supplies nor public improvements under its housekeeping powers. Both cases involved awards of exclusive transportation franchises.

27. Note in the *Fetters* and *Waszen* cases the courts distinguished between the status of the litigant taxpayer and that of unsuccessful bidders in resolving issues as to standing. In both decisions taxpayer-litigants were held to have standing while mere unsuccessful bidders were held to lack standing.
Although this same distinction was apparent to the trial judge at the time the motion to dismiss was first argued, he did not base his decision on appellant's status as a taxpayer nor has this question been properly argued in the briefs before this court. We therefore decline to pass upon the question of whether appellant as a taxpayer possesses the requisite standing to obtain judicial review of the administrative determinations involved in this appeal.

28. Section 16, article III of the Alaska constitution provides:
Governor's Authority. The governor shall be responsible for the faithful

■ On a motion to dismiss a complaint it is established that the well-pleaded allegations are taken as admitted.[29] Appellant's complaint alleged that appellees Bell and Holdsworth violated certain established leasing procedures in that appellee Inlet's purported agent, Wayne Cherrier, had failed to file with the director proof of his agency;[30] had failed to pre-file a development plan; and further alleged that Cherrier's check, which was tendered at the close of the auction, was not in conformity with the requirements of the applicable regulations.[31] Appellant further alleged that if appellees Bell and Holdsworth were not restrained they would enter into a formal lease with Inlet.[32] In consideration of these admitted allegations, we are of the opinion that appellant has the status of an aggrieved bidder and one who was in fact adversely affected by the director's and commissioner's determinations. In such circumstances, and in consideration of the provisions of section 10, article VIII of the Alaska constitution and AS 38.05.075 of the Alaska Land Act, we are of the opinion that the *Perkins*[33] rule is inapplicable to the case at bar.

execution of the laws. He may, by appropriate court action or proceeding brought in the name of the State, enforce compliance with any constitutional or legislative mandate, or restrain violation of any constitutional or legislative power, duty, or right by any officer, department, or agency of the State or any of its political subdivisions. This authority shall not be construed to authorize any action or proceeding against the legislature.

None of the briefs before us make any reference to this provision of our constitution and to its possible impact on the standing issue in the case at bar. In such circumstances we will await a more appropriate occasion to interpret this portion of Alaska's constitution.

29. 2 Moore, Federal Practice § 12.08 (2d ed. 1965). At the outset we indicated that the case at bar arose in this context, namely, upon appellees' motion to dismiss the complaint for failure to state a claim.

30. 11 Alaska Adm.Code § 203.02 (1962) provided in part:

An applicant or bidder for a lease is qualified if the applicant or bidder:

\* \* \* \* \*

(d) is acting as an agent for another and has qualified by filing with the Director, prior to the time set for the auction, a proper power of attorney or a letter of authorization creating such agency. The agent shall represent only one principal, to the exclusion of himself.

31. 11 Alaska Adm.Code § 302.15 (1963) provided in part:

The apparent high bidder \* \* \* shall concurrently deposit with the Division, such portion of the minimum annual rental as the Director has indicated, plus a deposit to cover the costs of advertising, appraisal and survey in cash and/or certified check and/or cashier's check and/or money order.

The requirement of "cash and/or certified check and/or cashier's check and/or money order" was deleted when § 302.15 was amended in 1965.

The notice of land auction in the case at bar requires in part that "The successful bidder shall deposit at the time of the award, first year's rental plus $100.00 to cover the costs of advertising."

32. AS 38.05.080 of the Alaska Land Act provides:

Before the director signs the lease, the commissioner may reject all bids for leases when the best interests of the state justifies this action.

There is no indication in the record at the time superior court made its ruling that the commissioner intended to reject all bids under his AS 38.05.080 authority. If this were the case, it might well indicate a different result than the one we have reached here as to appellant's standing.

Compare section 302.17, title 11, Alaska Administrative Code (1965) which reads:

Prior to the signing of the formal lease by the Director, the Commissioner may reject any and all bids for leases when the best interest of Alaska clearly justifies such action.

In the Notice of Land Auction pertaining to the auction in question, it was stated in part that "The right is reserved to waive technical defects in this publication and to reject any and all bids."

33. Case cited note 24 supra and quoted in text accompanying note 25 supra.

■ In reaching this conclusion, we again emphasize that here we are concerned with an unequivocal constitutional mandate requiring that all leases of state lands are to be entered into in accordance with safeguards imposed by law. This constitutional mandate, together with AS 38.05.075, furnishes a significant basis for distinguishing the *Perkins* line of cases. We construe AS 38.05.075 as a manifestation of the legislature's intent to authorize an aggrieved bidder to maintain an action seeking judicial review so that the public interest, in adherence to law in the disposal and leasing of state owned lands, may be vindicated.[34] We do not intend, nor do we now hold, that an aggrieved bidder is the sole or exclusive party through whom these important public interests are to be secured. Nor do we express any opinion as to the applicability of the *Perkins* rationale to other aspects of state and local government functions.

Our holding is limited to the facts of this case as disclosed in appellant's complaint. We therefore decline to follow the *Perkins* doctrine where leasing of state owned lands is in question, and where the party seeking judicial review is both an aggrieved bidder,

under AS 38.05.075, and one who, in fact, was adversely affected by the administrative determinations in question. In the context in which this appeal is presented, we believe it consonant with the intent of our constitution and with legislative intent that an aggrieved bidder, under AS 38.05.075, have standing to obtain judicial review of alleged violations of his protected interest, as well as to vindicate the public interest in the lawful leasing of Alaska's lands.[35]

One other point remains in this appeal. Appellant urges as an additional ground for reversal the lower court's refusal to allow an amendment to the complaint which would have added a second cause of action for declaratory relief. This motion was denied by the trial court on the basis that appellant lacked standing to sue, that it could not grant effective relief to appellant, and on the further ground that the State of Alaska was an indispensable party to the declaratory judgment cause of action.

Appellant argues that its proposed second cause of action was based on our declaratory judgment statute,[36] and Civil Rule 57 (a).[37] Appellant further contends that under Malasarte v. Colemen[38] leave to amend

34. Compare Scripps-Howard Radio, Inc. v. FCC, 316 U.S. 4, 8, 14–15, 62 S.Ct. 875, 86 L.Ed. 1229, 1233, 1236–1237 (1942); FCC v. Sanders Bros., 309 U.S. 470, 476–477, 60 S.Ct. 693, 84 L.Ed. 869, 875 (1940). As to the question of standing in general, see 3 Davis, Administrative Law §§ 22.01–.20 (1958).

35. In reaching this conclusion we do not pass upon the merits, or substantiality of, appellant's allegations that unlawful procedures were followed in regard to the lease auction in dispute.

36. AS 22.10.020(b) provides:
In case of an actual controversy within the state, the superior court, upon the filing of an appropriate pleading, may declare the rights and legal relations of an interested party seeking the declaration, whether or not further relief is or could be sought. The declaration has the force and effect of a final judgment or decree and is reviewable as such.

Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against an adverse party whose rights have been determined by the judgment.

37. Civ.R. 57(a) reads as follows:
Declaratory Judgments. The procedure for obtaining a declaratory judgment pursuant to statute shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar.

38. 393 P.2d 902, 903 (Alaska 1964).

pleadings should be freely granted.[39] Appellees Bell and Holdsworth defend the trial court's denial of amendment on three grounds. First, it is argued that amendment can properly be denied if it is subject to a motion to dismiss.[40] Secondly, it is argued that since neither the state nor appellees Bell and Holdsworth are obligated to issue a lease to anyone, the declaratory relief sought was inappropriate.[41] Thirdly, appellees contend that the State of Alaska was an indispensable party to the proposed declaratory judgment action and had not been made a party or given its consent to be sued.[42]

 In light of our holdings in regard to the judicial review and standing issues and our determination that appellant's injunction cause of action should not have been dismissed, we consider it unnecessary to pass upon this remaining question at this posture of the litigation.[43] Upon remand it is possible that appellant will desire to seek additional amendments to its complaint if, in fact, a lease has been issued to Inlet. There is also a strong possibility that the State of Alaska will desire to intervene upon remand due to our disposition of the primary questions in this appeal and the significance to the state of this litigation.[44] Although we choose not to pass upon the question at this time, we take this occasion to reiterate what was stated in State, Dept. of Highways v. Crosby[45] as to indispensable parties under Civil Rule 19. In that case we said:

> An indispensable party is one whose interest in the controversy before the court is such that the court cannot render an equitable judgment without having jurisdiction over such party. The determination of indispensability or lack of it involves a discretionary balancing of interests. On the one hand, consideration must be given to the possibility of rendering a judgment that will have an adverse factual effect on the interests of persons not before the court, and to the danger of inconsistent decisions, the desire to avoid a multiplicity of actions, and a reluctance to enter a judgment that will not end the litigation. On the other hand, considera-

---

39. In *Malasarte* we said in part:
 The policy of the courts of Alaska is concisely stated in Civil Rule 15(a) which provides among other things that leave to amend pleadings shall be freely given when justice so requires.

40. Appellees cite Gilbertson v. City of Fairbanks, 262 F.2d 734, 740 (9th Cir. 1959); Ledbetter v. Farmers Bank & Trust Co., 142 F.2d 147, 149 (4th Cir.), cert. denied, 323 U.S. 719, 65 S.Ct. 48, 89 L.Ed. 578 (1944); 3 Moore, Federal Practice § 15.-10 (1966).

41. Compare with the scope of declaratory relief requested by appellant in its proposed amended complaint. See note 7 supra.

42. Appellees cite Texas Oyster Growers Ass'n v. Odom, 385 S.W.2d 899 (Tex. 1965); Courtney v. Byram, 54 Cal.App. 2d 769, 129 P.2d 721 (1942); and Lucas v. Banfield, 180 Or. 437, 177 P.2d 244 (1947), in support of their position. Appellee Inlet advances a similar argument in its brief and additionally argues that since the subject matter of the law suit is no longer in dispute (i. e., the lease has purportedly been issued to appellee Inlet) the matter is moot and the amendment was therefore properly denied. We note that appellee Inlet's assertion that a lease has been issued does not appear of record and is not conceded by appellant.

43. Additionally, we have concluded that it would be inappropriate to decide this issue at this time because of the inadequate treatment accorded it in the briefs of the parties (particularly deficient is appellant's coverage of the question).

44. After the superior court had dismissed appellant's first cause of action and had denied leave to amend, the State of Alaska moved to be made a party to the law suit. This motion was made in connection with costs and attorney's fee issues and was subsequently withdrawn by the state.

45. 410 P.2d 724, 725–726 (Alaska 1966) (footnotes omitted). Accord, City of Fairbanks v. Electric Distribution Sys., Opinion No. 339, 413 P.2d 165, 166–167 (Alaska 1966); 80 Harv.L.Rev. 678 (1967).

tion must be given to the desirability of having some adjudication if at all possible rather than none, leaving the parties before the court without a remedy because of an 'ideal desire to have all interested persons before the court.' Courts exist for the determination of disputes, and they have an obligation in particular litigation to make meaningful determinations 'if at all possible.

For the foregoing reasons the superior court's dismissal of appellant's first cause of action is set aside and the case remanded for further proceedings not inconsistent with this opinion.