UNITED STATES SMELTING, REFINING
AND MINING COMPANY, Appellant,

v.

LOCAL BOUNDARY COMMISSION, State
of Alaska, and City of Nome, Appellees.

No. 1461.

Supreme Court of Alaska.

Sept. 29, 1971.

William G. Ruddy, Robertson, Monagle, Eastaugh & Bradley, Juneau, for appellant.

Allan A. Engstrom and Gordon E. Evans, of Davidson, Engstrom & Evans, Juneau, for appellees.

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR and ERWIN, JJ.

RABINOWITZ, Justice.

In this appeal we are asked to decide numerous questions generated by the role the Local Boundary Commission played in the annexation by the city of Nome of United States Smelting's properties. We have determined that the superior court's order dismissing United States Smelting's action for declaratory judgment should be reversed with directions to enter a declaratory judgment decreeing the annexation in question to be invalid and of no effect.

Alaskan municipalities may gain territory in various ways. The city of Nome sought to do so through the Local Boundary Commission. Article X, section 12 of the Alaska Constitution provides:

A local boundary commission or board shall be established by law in the executive branch of the state .government. The commission or board may consider any proposed local government boundary change. It may present proposed changes to the legislature during the first ten days of any regular session. The change shall become effective forty-five days after presentation or at the end of the session, whichever is earlier, unless disapproved by a resolution con-

curred in by a majority of the members of each house. The commission or board, subject to law, may establish procedures whereby boundaries may be adjusted by local action.

By statute it is provided that the commission must make studies of local government boundary problems, develop proposed standards and procedures for changing boundaries, and consider boundary changes requested of it by political subdivisions.[1] The commission may conduct hearings on boundary changes and present proposed changes to the legislature.[2] The change becomes effective unless the legislature disapproves; legislative silence permits the change.[3]

In the lower court United States Smelting instituted an action against the Local Boundary commission and the city of Nome for a declaratory judgment. The complaint stated that the commission had recommended annexation of a large area including United States Smelting property to the city of Nome, and that the legislature had not disapproved the recommendation. By way of relief, United States Smelting asked the superior court to declare the annexation invalid. United States Smelting moved for summary judgment and the city of Nome moved for dismissal. United States Smelting's motion was denied, and the city of Nome's motion was granted. United States Smelting now appeals from the dismissal of its declaratory judgment action by the superior court.

In this appeal, United States Smelting advances three specifications of error. It is contended that the commission took United States Smelting property without substantive due process, without procedural due process, and without just compensation. Appellees city of Nome and the commission, besides countering these arguments, contend that United States Smelting lacks standing, and that annexation is a political question outside this court's jurisdiction to review.

■ As part of its due process argument, United States Smelting contends that the failure of the commission to promulgate standards for boundary changes vitiated the annexation of its properties. AS 44.19.260(a) lists four functions the commission "shall" perform. These are:

(1) make studies of local government boundary problems;

(2) develop proposed standards and procedures for changing local boundary lines;

(3) consider a local government boundary change requested of it by the legislature, the director of local affairs, or a political subdivision of the state; and

(4) develop standards and procedures for the extension of services and ordinances of incorporated cities into contiguous areas for limited purposes * * *.[4]

AS 44.19.260(b) additionally lists two functions that the commission "may" perform. The two functions are:

(1) conduct meetings and hearings to consider local government boundary changes and other matters related to local government boundary changes, including extensions of services by incorporated cities into contiguous areas and matters related to extension of services; and

(2) present to the legislature during the first 10 days of a regular session proposed local government boundary changes * * *.

We think it clear from the overall structure of AS 44.19.260 that the duties imposed upon the commission in subsection

1. AS 44.19.260(a).

2. AS 44.19.260(b).

3. AS 44.19.340.

4. Alaska Const. art. X § 12 states in part that the commission "subject to law, may establish procedures whereby boundaries may be adjusted by local action." Since the annexation at issue was not "by local action," but by commission action and legislative silence, this constitutional provision has no applicability to the issues in this appeal.

(a) are mandatory, and those in subsection (b) discretionary.[5] We are of the further opinion that the language employed by the legislature made the exercise of the commission's discretion under AS 44.19.260(b) conditioned upon the development of standards and procedures for changing local boundary lines under AS 44.19.260(a) (2). In short, we hold that before the commission could have conducted any effective meetings, or hearings, and prior to its submitting to the legislature a valid proposal concerning the Nome annexation, it was obligated to comply with the requirement of AS 44.19.260(a) (2) that it develop standards for changing local boundary lines.

The grammar and nature of some clauses of AS 44.19.260(a) suggest commission action over a considerable period of time. The duty to "make studies," under subsection (a) (1), would seem to indicate such studies as are necessary during the life of the agency. Arguably, the duty to develop standards for changing local boundary lines under AS 44.19.260(a) (2) is of the same sort. It means, under such a reading, that as the commission learns from experience and finds standards necessary, it should develop them over its life. We do not find such a construction very persuasive however. The duty under AS 44.19.-260(a) (3) to consider requested boundary changes implies a reasonable time limitation. This reasonable time limitation leads to the conclusion that not all of subsection (a) can be characterized as comprehending continuing duties and not conditions.

In our view the Local Boundary Commission has had sufficient time to discover sensible principles pertaining to the chang-ing of local boundaries. Permitting continued failure on the commission's part to promulgate standards for changing local boundary lines can no longer be justified by the need for further experience.[6] Since under AS 44.19.260(a) the legislature required the commission to develop standards in order to recommend boundary changes, and the commission had not developed standards prior to the Nome annexation proceedings, we hold that the commission lacked the power to recommend the Nome boundary changes in question.[7] To do otherwise would be to condone the commission's nonobservance of a valid legislative prerequisite to the exercise of the commission's discretion in matters of local boundary changes.

Our holding necessarily embodies the rejection of the city of Nome's and the commission's argument that an aggrieved property owner in an area to be annexed lacks standing to contest the annexation and that all facets of annexation are political questions for exclusive legislative resolution. We turn first to the political question contention and the subject of judicial review of annexation questions in general.

In Alyeska Ski Corporation v. Holdsworth, 426 P.2d 1006, 1012 (Alaska 1967), this court was faced with a situation where there was no express statutory provision providing for judicial review of the administrative action in question. In that case, we concluded that it was not intended that this court was to be stripped of its constitutional obligation to insure that the administrative decision was in conformity with our laws. More recently in K & L Distributors, Inc. v. Murkowski, 486 P.2d 351, 354 (Alaska 1971), we had occasion to

---

5. *See generally* 2 F. Horack, Sutherland on Statutory Construction § 2803 (3rd ed. 1943) and 3 F. Horack, Sutherland on Statutory Construction §§ 5808, 5811, 5821 (3rd ed. 1943).

6. SLA 1959, ch. 64, § 7 provided in part that "The Local Boundary Commission is hereby vested with the duties, powers, and responsibilities involved in * * * developing proposed standards and procedures for changing local boundary lines * * *." It was not until the enact-ment of ch. 55, SLA 1964 that AS 44.19.260(a) and (b) were structured substantially in their present form which makes the development of standards a precondition to the commission's exercise of its discretion under subsection (b).

7. It appears that the commission has developed procedures for changing local boundary lines. In 6 Alaska Adm.Code §§ 2000–07, the commission has stated detailed procedural rules for boundary change proceedings.

decide whether the commissioner of Economic Development's grant of an industrial incentive tax credit was subject to judicial review in the face of a statute which provided that "All decisions and findings of the ['Commissioner] * * * are final and no judicial or administrative appeal or other proceeding lies against them * * *." In *Murkowski*, we said that Alyeska Ski Corporation v. Holdsworth indicated strong policy reasons favoring judicial review of administrative action. We went on to say in *Murkowski* that:

> It is the constitutionally vested duty of this court to assure that administrative action complies with the laws of Alaska. We would not be able to carry out this duty to protect the citizens of this state in the exercise of their rights if we were unable to review the actions of administrative agencies simply because the legislature chose to exempt their decisions from judicial review. The legislative statement of finality is one which we will honor to the extent that it accords with constitutional guarantees. But if the administrative action is questioned as violating, for example, the due process clause, we will not hesitate to review the propriety of the action to the extent that constitutional standards may require.[8]

Of particular importance to the issues in this appeal is *Murkowski's* statement of the scope of judicial review of an administrative decision in order to assure compliance "with due process under Alaska law."[9] In this regard, the proper limits of judicial review were formulated in the following manner:

> The safeguard which due process assures is not that a court may examine each factual finding to see that it is correct, or even that it is supported by substantial evidence. Rather, we will review to assure that the trier of fact was an impartial tribunal, that no findings were made except on due notice and opportunity to be heard, that the procedure at the hearing was consistent with a fair trial, and that the hearing was conducted in such a way that there is an opportunity for a court to ascertain whether the applicable rules of law and procedure were observed.[10]

Thus, even in light of purported administrative finality *Murkowski* permits judicial review of an administrative decision to ascertain whether the "applicable rules of law and procedure were observed." This test delineates the contours of judicial review employed by us in the case at bar in reaching the conclusion that the Local Boundary Commission failed to comply with the mandate of AS 44.19.260(a) that it develop standards for the changing of the local boundary lines. Without doubt there are questions of public policy to be determined in annexation proceedings which are beyond the province of the court. Examples are the desirability of annexation, as expressed in published standards. Judicial techniques are not well adapted to resolving these questions. In that sense, these may be described as political questions," beyond the compass of judicial review. But other annexation issues, such as whether statutory notice requirements were followed, are readily decided by traditional judicial techniques. *Murkowski* clearly permits this latter type of review.

Our decision as to the availability of judicial review of the Local Boundary Commission's action in this case is reflective of our determination that it is administrative action, rather than legislative action which we have been called upon to review. We thus find unpersuasive the argument that article X, section 12 of the Alaska Constitution and AS 44.19.340[11] make the decision as to whether the commission has complied with the law exclusively legislative. We

---

8. K & L Distributors, Inc. v. Murkowski, 486 P.2d 351, 357 (Alaska 1971) (footnote omitted).

9. *Id.*

10. Id. at 357. (footnote omitted)

11. This statute reads as follows:
   When a local government boundary change is proposed to the legislature during the first 10 days of any regular session, the change becomes effective 45 days after presentation or at the end of

think such a construction would be contrary to our decisions in *Alyeska* and *Murkowski* and reads too much into legislative silence. For the constitution empowers the legislature to veto commission actions, but does nothing to compel the legislature to review for compliance with its own requirements. The *Alyeska* and *Murkowski* cases stress the point that under Alaska's Constitution this court has the duty of insuring that administrative action complies with the laws of Alaska. Absent known standards governing the changing of local boundary lines, the legislature's ability to make rational decisions as to whether to approve or disapprove proposed local boundary changes of the commission is seriously handicapped.

■ This brings us to the question of whether or not an aggrieved property owner in an area to be annexed has standing to contest the annexation.[12] We think this question must be answered in the affirmative because persons, or entities, in United States Smelting's position are precisely the ones who are injured by improper annexation. This conclusion is in accord with our decision in K & L Distributors, Inc. v. Murkowski.[13] There competing wholesale distributors of malt liquor in Alaska filed a complaint seeking judicial review of the Commissioner of Economic Development's grant of an industrial incentive tax credit to the Oetker Brewing Company. The

commissioner and Oetker Brewing argued that the mere fact that the malt distributors were competitors did not endow them with standing to contest the commissioner's decision. While acknowledging that traditional doctrine would deny the wholesale malt distributors standing based solely on their competitive position, we held that the distributors did have standing. In reaching this conclusion we said in part that:

> In this case the question of the ability of the state to grant an industrial incentive tax credit is of substantial importance * * *. No one has a greater interest in the outcome of the request for exemption than appellants [the wholesale malt distributors], and if they cannot raise the issue, it is unlikely that the issue will be raised.[14]

In the case at bar, United States Smelting owns approximately 16 square miles of the area involved in the annexation by the city of Nome. In light of this fact and our decision in *Murkowski*, we hold that United States Smelting has standing to seek judicial review of the Local Boundary Commission's actions in the Nome annexation proceedings.

We therefore conclude that the superior court's judgment of dismissal should be reversed and the cause remanded with directions to enter a declaratory judgment decreeing the annexation to be invalid and of no effect.[15]

---

the session, whichever is earlier, unless disapproved by a resolution concurred in by a majority of the members of each house.

12. Fairview Pub. Util. Dist. No. 1 v. City of Anchorage, 368 P.2d 540 (Alaska 1962), and Oesau v. City of Dillingham, 439 P.2d 180 (Alaska 1968), involved boundary change issues. In neither case did we decide the standing and political question doctrines which are advanced in this appeal.

13. K & L Distributors, Inc. v. Murkowski, 486 P.2d 351 (Alaska 1971). *Compare* Alyeska Ski Corp. v. Holdsworth, 426 P.2d 1006, 1015 (Alaska 1967). There we held that an aggrieved bidder had standing to seek judicial review of a decision of the Commissioner of Natural

Resources "so that the public interest, in adherence to law in the disposal and leasing of state owned lands, may be vindicated." (footnote omitted).

14. K & L Distributors, Inc. v. Murkowski, 486 P.2d 351, 354 (Alaska 1971) (footnote omitted).

15. Existing cities with Local Boundary Commission created boundaries remain unaffected by our holding in this case under the *de facto* municipality doctrine. Rothkopf v. City of Danbury, 156 Conn. 347, 242 A.2d 771 (1968); C. Tooke, De Facto Municipal Corporations. Under Unconstitutional Statutes, 37 Yale L.J. 935 (1928).

Our disposition makes unnecessary resolution of any other question which was presented in this appeal.