Greg **JOHNS, Leo Woods, and Mike Lynch, Appellants,**

v.

**COMMERCIAL FISHERIES ENTRY COMMISSION and the State of Alaska, Appellees.**

No. S–139.

Supreme Court of Alaska.

May 10, 1985.

Douglas Pope, Pope & Rogers, Juneau, for appellants.

John B. Gaguine, Asst. Atty. Gen., Norman C. Gorsuch, Atty. Gen., Juneau, for appellees.

Before RABINOWITZ, Chief Justice, BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Mike Lynch (Lynch), Leo Woods (Woods) and Greg Johns (Johns) appeal from a judgment of the superior court dismissing their action for declaratory and injunctive relief on the ground that each plaintiff lacked standing. The superior court further held that the refusal of the Commercial Fisheries Entry Commission (CFEC) to grant a hearing to consider changing one of its regulations was not judicially reviewable. For the reasons stated hereafter, we reverse both decisions.

Appellants Lynch, Woods, and Johns have made their living seining for bait and roe herring in Southeast Alaska for more than a decade. In 1977 the CFEC limited entry in the Southeast Alaska roe herring fishery, and set the maximum number of units permitted entry at 35. 20 AAC 05.-320(b)(1). The CFEC set up a point system whereby six points constituted a "priority classification" and guaranteed an entry permit. 20 AAC 05.666(1). Woods, Lynch and Johns applied for Southeast roe her-

ring seine permits but were classified below six points. They all requested administrative hearings on their respective classifications. From this stage, their cases proceeded along three separate lines.

Woods awaits the outcome of the administrative process. He has had a hearing, but the hearing officer has not issued a recommended decision to the CFEC.

Lynch also awaits the outcome of the administrative process. The hearing officer recommended denial of Lynch's point claims, but the CFEC has not acted on the recommendation.

In April 1982, while the agency considered his case, Johns requested the CFEC to amend the 35 maximum limit of entries and increase it to 49. The CFEC responded by letter, explaining it would not reconsider the maximum number. It said:

> The reason no such plans are being entertained is that 43 permits have been issued at the significant hardship level (six points), and seven applications [including the appellants'] are still in administrative process. Therefore, there is a mathematical possibility of meeting an[d] exceeding your proposed number without the action you suggest.

On September 9, 1982, the CFEC denied Johns his permit. The same month, Johns petitioned for reconsideration and renewed his request that the 35 maximum limit be changed. The CFEC refused to reconsider its decision and Johns appealed the permit denial to the superior court, Judge Walter L. Carpeneti presiding (1JU–82–1814 Civil).

As part of his appeal from the permit denial, Johns raised the issue that the CFEC erred by not granting his petition to amend the maximum number of entries.

The CFEC moved to strike this issue, contending that an attack on agency regulations was not properly part of an appeal from a permit denial and, instead, should be brought as an action for declaratory relief.

Before Judge Carpeneti ruled on the motion, Woods, Lynch and Johns filed the present suit seeking declaratory and injunctive relief.[1] Judge Henry C. Keene subsequently dismissed the action on the ground that the appellants lacked standing, and this appeal followed.

## II. STANDING

The first major issue raised by this appeal concerns the standing of Woods, Lynch and Johns to seek declaratory and injunctive relief against the CFEC.[2] Where challenges to administrative practices are involved, this court has adopted a liberal posture towards standing, favoring accessibility to the courts. *Wickersham v. CFEC*, 680 P.2d 1135, 1139 (Alaska 1984). At the same time, this court has reaffirmed the necessity that a "party asserting standing [demonstrate] a sufficient 'personal stake' in the outcome of the controversy to ensure the requisite adversity." *Hoblit v. Commissioner of Natural Resources*, 678 P.2d 1337, 1340 (Alaska 1984). Even where, as here, constitutional infirmities are alleged to undermine the regulations "[a] court will not reach [such] questions unless the litigant raising them has demonstrated that he has been injured in fact by the allegedly illegal measures." *Id.* at 1340 n. 3; *see Younker v. CFEC*, 598 P.2d 917, 920–21 (Alaska 1979).

The CFEC argues that the appellants cannot show a definite personal stake in challenging roe herring seine fishery regu-

---

**1.** After the second suit was filed, Judge Carpeneti granted CFEC's motion to strike the "maximum number" issue. Johns' appeal of his permit denial before Judge Carpeneti is still pending.

**2.** The complaint alleges that the regulations were arbitrary and capricious, thus in violation of the Limited Entry Act (AS 16.43.010 et seq.); that the regulation violated the natural resources article of the Alaska Constitution, and the equal protection clauses of the Alaska and United States Constitutions; that the regulations guarantee a particular economic return to an exclusive class and as such violate the common use and exclusive fishery sections of the natural resources article of the state constitution. The complaint seeks relief declaring the regulations invalid and enjoining the CFEC from denying plaintiffs access to the Southeast roe herring seine fisheries.

lations because they cannot point to any injury suffered as a result of the maximum number regulation. Each of the three has an interim use permit at the present time. Moreover, their permit applications await final administrative (Woods and Lynch) or judicial (Johns) resolution. This means each one may ultimately obtain permission to enter the fishery. If that happens, the CFEC maintains, they will never have suffered injury as a result of the maximum number limitation. This line of reasoning combines principles of ripeness and exhaustion of remedies. Appellants, on the other hand, argue that the threatened loss of their right to enter the fishery constitutes a sufficient personal stake to challenge CFEC regulations limiting permittees to 35.

 AS 44.62.300 provides the starting point for our analysis. That statute states in pertinent part that "[a]n interested person may get a judicial declaration on the validity of a regulation by bringing an action for declaratory relief in the superior court...." [3] The caselaw defining "interested person" provides ample authority that the threat of future injury confers standing to seek judicial aid to forestall a possible harm. *Rutter v. CFEC*, 668 P.2d 1343 (Alaska 1983); *Sisters of Providence in Washington v. Department of Health and Social Services*, 648 P.2d 970 (Alaska 1982); *Moore v. State*, 553 P.2d 8 (Alaska 1976); *United States Smelting, Refining and Mining v. Local Boundary Commission*, 489 P.2d 140 (Alaska 1971).

*Rutter* involved a challenge to CFEC regulations limiting salmon hand trollers, based on statutory and constitutional grounds. The CFEC decided to issue 2150 permits. When the application deadline passed 2274 had been received; Rutter's was among them. Rutter feared he would not get a permit, so he sought a declaratory judgment that the regulations were invalid. Based on his application, the CFEC

determined it was nearly certain Rutter would get a permit and argued as a result that the case was moot and Rutter had no standing.

This court rejected that contention. In so doing, the court interpreted and applied AS 44.62.300 which provides that "an 'interested person' has standing to obtain judicial review of an administrative regulation." *Rutter*, 668 P.2d at 1346. The court stated that

Rutter is "interested" in the number of permits issued, for his ability to fish commercially is directly affected by the number of trollers using the fishery.... That Rutter will obtain a permit does not alleviate his concern, for he is concerned that too many *other* applicants will also obtain permits. [emphasis in original].

*Id.*

*Sisters of Providence* involved a challenge to an administrative decision by the Department of Health (DOH) that the Lake Otis Hospital (LOH) project had been "substantially implemented," thereby complying with prerequisites to finishing construction. DOH asserted Providence had no standing because their future harm from a competing hospital was too speculative, i.e., LOH might never be built; the demand for hospitals might increase; a native corporation could buy LOH, reducing available beds; LOH might lose its certificate. The court concluded that LOH's "argument that the threat of future injury to Providence is insufficient to create standing is contrary to precedent and logic." *Sisters of Providence*, 648 P.2d at 975. Threatened harm can be the basis of standing.

*Moore* involved a challenge to state-approved oil leases and drilling permits. Most of the challengers were fishermen in Kachemak Bay whose livelihood depended on maintaining the ecological balance in the bay. Drilling had not yet begun when the

---

**3.** AS 44.62.300 provides in full:

An interested person may get a judicial declaration on the validity of a regulation by bringing an action for declaratory relief in the superior court. In addition to any other ground the court may declare the regulation

invalid (1) for a substantial failure to comply with AS 44.62.010—44.62.320, or (2) in the case of an emergency regulation or order of repeal, upon the ground that the facts recited in the statement do not constitute an emergency under AS 44.62.250.

suit was brought and the state moved to dismiss for lack of standing. This court held that the plaintiffs "clearly possess a personal stake in the disposition of the resources of the bay, and stand to incur significant injury if such a disposition were allowed to occur without the benefit of a presentation of their competing interest in those resources." *Moore*, 553 P.2d at 24. The case does not mention the extent to which drilling would have *actually* upset the bay's ecology; the focus, instead, appears to have been on the possible economic loss to the fishermen as sufficient to confer standing. A party need not wait for anticipated harm to materialize before bringing an action to protect his rights.

In *United States Smelting* plaintiff owned sixteen square miles of land which the city of Nome sought to annex. The court found standing based on the boundary commission's approval of annexation even though annexation had not actually occurred. *United States Smelting*, 489 P.2d at 144.

The CFEC explains *Sisters of Providence*, *Moore* and *United States Smelting* as authority for the proposition that threatened harm confers standing only when the harm will *inevitably* occur. Thus, in *United States Smelting* the annexation had not been consummated, but commission approval made it a virtual certainty. In *Moore*, exploration for oil had not commenced, but "a company does not apply for drilling permits if it does not intend to drill, and there were no further legal barriers to drilling." The CFEC attempts to fit *Sisters of Providence* into the scheme by arguing: (1) a time limit for taking the administrative appeal prevented plaintiffs there from waiting to see whether they would suffer harm; "[h]ere, by contrast, there is nothing to prevent the plaintiffs from waiting until the threatened harm

materializes (i.e., their applications are finally denied)" and (2) the Sisters could do nothing to prevent the private financing of the proposed competitor, whereas Lynch, Woods and Johns are pursuing courses of action that may prevent their harm from materializing.

■ We are not persuaded by the CFEC's reading of the precedents nor by its proposed *rule of inevitability*. Adopting the rule of inevitability would establish an unwarranted distinction between possible and certain harm for purposes of determining standing; such a rule would deny standing to parties who could demonstrate at the filing of a complaint only the possibility of harm. That approach is not consonant with the thrust of Alaska law. We think it bad law and bad policy to approve a rule which shuts the courthouse doors until, in certain situations, it may be too late to obtain meaningful judicial relief. These appellants are interested persons within the meaning of AS 44.62.300 for purposes of challenging CFEC regulations by virtue of their interim use permits, their pending permit applications and their demonstrated dependence on roe herring seining for many years.

## III. REVIEWABILITY OF CFEC'S REFUSAL TO GRANT A HEARING

The CFEC asserts that its refusal to hear John's challenge to the regulations is not judicially reviewable. The CFEC argues that it is entirely within the agency's discretion to deny or to grant a hearing on a petition seeking to change a regulation per AS 44.62.220.[4] Support for this position comes from AS 44.62.230, which provides in pertinent part:

Upon receipt of a petition requesting the adoption, amendment or repeal of a regu-

---

4. AS 44.62.220 provides:

Unless the right to petition for adoption of a regulation is restricted by statute to a designated group or the procedure for the petition is prescribed by statute, an interested person may petition an agency for the adoption or repeal of a regulation as provided in AS 44.-

62.180—44.62.290. The petition shall state clearly and concisely
 (1) the substance or nature of the regulation, amendment, or repeal requested;
 (2) the reasons for the request;
 (3) reference to the authority of the agency to take the action requested.

lation under AS 44.62.180—44.62.290, a state agency shall, within 30 days, deny the petition in writing or schedule the matter for public hearing....

The statute does not provide for any review of action taken pursuant to AS 44.62.220.

■ The absence of any mention of reviewability in AS 44.62.230 does not necessarily mean a court cannot pass on the validity of an act done pursuant to the provision. In *Alyeska Ski Corp. v. Holdsworth*, 426 P.2d 1006 (Alaska 1967), there was no express statutory provision permitting judicial review of the administrative acts at issue. The Commissioner of the Department of Natural Resources and the Director of the Division of Lands approved a lease of public lands according to the Alaska Land Act. A question arose whether the administrative decision was reached in accordance with the law. Specifically, it was alleged that the successful bidder did not file a development plan; did not file evidence of his authority to act for his principal; that the payment tendered did not meet the law's requirements. *Id.* at 1007. The defense of non-reviewability was raised and we rejected it, explaining that "it was not intended that Alaska's courts be divested of their constitutionally vested duty to insure compliance with the laws of Alaska." *Id.* at 1012.

■ Courts have the power in situations such as this, in other words, to look for administrative compliance with the demands of due process. *K & L Distributors v. Murkowski*, 486 P.2d 351 (Alaska 1971). In *Murkowski*, the court had to decide whether the Commissioner of Economic Development's grant of an industrial incentive tax credit was subject to judicial review in the face of a statute which provided: "All decisions and findings of the [Commissioner] ... are final and no judicial or adminis-

trative appeal or other proceeding lies against them...." AS 43.26.040(e). The *Murkowski* court borrowed from its decision in *Holdsworth* to justify a judicial review limited in scope, despite the statute's clear language:

It is the constitutionally vested duty of this court to assure that administrative action complies with the laws of Alaska. We would not be able to carry out this duty to protect the citizens of this state in the exercise of their rights if we were unable to review the actions of administrative agencies simply because the legislature chose to exempt their decisions from judicial review. The legislative statement of finality is one which we will honor to the extent that it accords with constitutional guarantees. *But if the administrative action is questioned as violating, for example, the due process clause, we will not hesitate to review the propriety of the action to the extent that constitutional standards may require.*

*Murkowski*, 486 P.2d at 357 (emphasis added, footnote omitted). This court's precedents fully support the reviewability of the CFEC's refusal to grant Johns a hearing.[5]

■ The determination that the CFEC's refusal to grant a hearing is judicially reviewable does not end our inquiry. We must further ask whether the CFEC complied with the demands of the law when it refused to hold a hearing as Johns requested. AS 44.62.230 provides that "a state agency shall, within 30 days, deny the petition in writing or schedule the matter for public hearing...." Johns first sought to change the maximum number regulation in April 1982. The CFEC responded the same month with the letter reproduced in part above.[6] This document meets the require-

---

**5.** The commentators also support this result. Professor Davis has said: "[T]he presumption of reviewability controls unless it is rebutted by affirmative indication of legislative intent in favor of unreviewability or by some special reason for unreviewability growing out of the subject matter or the circumstances." K. Davis, Administrative Law Treatise § 28.21, at 993 (Supp.1970).

**6.** The full text of the CFEC's letter reads:

April 14, 1982

Douglas Pope
Juneau Law Office
526 Main St.
Juneau, A[K] 99801
Dear Mr. Pope:

ments of the statute, and demonstrates that the refusal to grant a hearing was not arbitrary. Accordingly, we find no error regarding the CFEC's actions.[7]

Based on the preceding discussion, we reverse the decision of the superior court that appellants lacked standing and remand the case for further proceedings consistent with this opinion.[8]

REVERSED and REMANDED.

This is responsive to your letter of April 5, 1982, regarding the amendment of 20 AAC 05.-320(b)(1) from a maximum number of 35 to 49 for the Southeastern Alaska roe herring purse seine fishery. I am sorry to inform you that the commission has no plans to amend its regulations in that manner at this time. The reason no such plans are being entertained is that 43 permits have been issued at the significant hardship level (six points), and seven applications are still in administrative process. Therefore, there is a mathematical possibility of meeting an[d] exceeding your proposed number without the action you suggest.

> Sincerely,
> Robert J. Simon
> Chairman

RJS:jla

7. We assume that a statutory command requiring an agency to respond to a petition "in writ-

ing" calls for a decisional document. *Ship Creek Hydraulic Syndicate v. Department of Tran. & Pub. Facilities,* 685 P.2d 715 (Alaska 1984). Such documents serve the salutary purposes of improving agency decision-making, an applicant's assessment of further options in case of an unfavorable decision, and meaningful review by appellate tribunals. As this court stated in *Ship Creek,* "[I]f a statute requires reasoned decisions, and the legislature has not expressly or by implication limited judicial authority to decide how to review administrative action, courts may and should require agencies to explain their decisions." *Id.* at 718.

8. On remand, appellants may not pursue the third and fourth causes of action set out in the previous pleading. The issue raised by the third cause of action has been disposed of by this opinion and appellants abandoned the fourth cause of action on appeal.