STATE of Alaska, DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES, Petitioners,

v.

0.644 ACRES, MORE OR LESS, Robert E. Cooper, Virginia G. Cooper, Respondents.

No. 4861.

Supreme Court of Alaska.

June 27, 1980.

Martha T. Mills, Asst. Atty. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for petitioners.

John R. Strachan, and Leroy J. Barker, Anchorage, for respondents.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE, and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Chief Justice.

The State of Alaska brings this petition for review from a judgment of dismissal in which the superior court vacated the state's declaration of taking and divested the state of the title it had acquired in the subject condemnation action as it pertained to respondents.[1] Review has been granted because of the significance of the legal issues involved.[2]

The central issue in this petition involves interpretation of the 1976 amendment to Alaska's statutory provisions relating to declarations of taking. These amendments followed in the wake of our decision in *ARCO Pipeline Co. v. 3.60 Acres*, 539 P.2d 64 (Alaska 1975) and had as their purpose to

1. AS 09.55.460(b) provides in part:

The plaintiff may not be divested of a title or possession acquired except where the court finds that the property was not taken by necessity for a public use or purpose in a manner compatible with the greatest public good and the least private injury.

The superior court's judgment of dismissal decreed in part:

That the Declaration of Taking filed herein is vacated and title is re-vested in the defend-

ants, where defendants refund the monies as hereinafter provided.

2. On December 6, 1979, this court entered an order which granted review and further provided that:

The oral order of the superior court . . . and the written order of . . . August 31, 1979, setting aside the declaration of taking, are affirmed.

add to the existing declaration of taking provisions the requirement of necessity— that the project be located in a manner which is most compatible with the greatest public good and the least private injury. More specifically the 1976 amendment to AS 09.55.430, .450(a) and .460(b) provided that: (1) a declaration of taking must include a statement that the taking is "by necessity for a project located in a manner which is most compatible with the greatest public good and the least private injury"; [3] (2) the right to possession of the land did not pass until after a hearing on the condemnee's objections; [4] and (3) the condemnor may be divested of title "where the court finds that the property was not taken by necessity for a public use or purpose in a manner compatible with the greatest public good and the least private injury." [5]

The relevant facts are as follows. The state is planning expansion of the Homer airport. It originally planned to take land extending back to 900 feet from the centerline of the Homer airport runway for expansion of an aircraft parking apron, an access road, and a security fence. In appraising the various parcels of land within the strip to be condemned, the state discovered that the Coopers had constructed a helipad and a building on their lot. As a result, the state changed its plan, reducing the condemned strip to 780 feet from the centerline. The present plan includes construction of a nine by nine and one-half foot fence, parallel to the access road edging the aircraft parking apron, some twenty-five feet from the Coopers' helipad.[6]

The superior court in its ruling determined that:

The Coopers have shown the court by clear and convincing evidence that the State failed to consider the effect of the fence and the road on the operation of the Coopers' heliport, which is just adjacent to the airport . . . At a very minimum the State must ascertain and consider what private injury will be occasioned by a particular project in order to perform its further responsibility of judging compatibility in accordance with the statutory mandate. Specifically, they failed to do so in this present case and it is my conclusion that to so fail . . . is necessarily to act arbitrarily and capriciously.

Thus, the superior court concluded that the state had failed to consider facts which must be taken into account as a part of a rational determination of the greatest public good and the least private injury.

▮ In this petition the state advances several arguments in support of its primary contention that:

Given the 1976 amendments to the statute, the question now is to what extent is the state required to investigate each individual private injury and what is the proper role for the court in reviewing the State's determination that a project has been located in a manner consistent with the greatest public good and the least private injury.

First, the state asserts that it did in fact consider the impact of the project taking upon the Coopers' property. Thus, the state claims that the superior court erroneously substituted its own judgment for that of the condemning agencies and the state. Second, the state contends that in designing and planning a project "it must consider the project as a whole and the private injury as a whole." Third, the state takes the position that the Coopers waived their right to object to the taking.[7] Fourth, the state

---

**3.** AS 09.55.430(7).

**4.** AS 09.55.450(a).

**5.** *See* note 1 *supra*.

**6.** The state brought an eminent domain action in the superior court pursuant to AS 09.55.290. In order to obtain immediate possession of the land, the state filed a declaration of taking as authorized by AS 09.55.420.

**7.** We find no merit in the state's waiver argument. The state's waiver theory is premised upon the Coopers' withdrawal from the registry of the court of the monies which were deposited by the state in conjunction with its filing of a declaration of taking against the Coopers' property. *See* AS 09.55.-440(a), .450(a), .450(c); Alaska R.Civ.P. 72(j). The monies deposited in the registry were withdrawn, pursuant to stipulation, after the Coo-

contends that a factual hearing is not required in the circumstance where the condemnee presents no affidavit in support of a motion to vacate the declaration of taking.[8]

We turn first to the state's contention that it introduced evidence which "clearly" indicated that it did consider the impact of the taking on the Coopers' use of the property and reduced the amount of the taking of the Coopers' property by 120 feet.[9] Our study of the record indicates that testimony from the state's own witnesses not only undercuts this assertion but furnishes ample support for the superior court's conclusion, set forth earlier, that the Coopers had shown by "clear and convincing evidence that the state failed to consider the effect of the fence and the road on the operation of the Coopers' heliport. . . . ."[10]

This brings us to the state's major contention in this review proceeding. The state's argument is that "in designing and planning a project, it must consider the project as a whole and the private injury as a whole."[11] As so stated, this position is unobjectionable, but this does not mean that individualized consideration of the private injury to be suffered by each landholder may be dispensed with. The mandate of AS 09.55.460(b) is that "private injury" be considered with reference to the particular properties involved. In our view the statute contemplates that the injury suffered by each individual should be minimized to the extent that it is reasonably possible to do so without impairing the integrity and

pers had objected to the declaration of taking. No express provision for a waiver of objections to the taking was made part of the stipulation for withdrawal.

AS 09.55.460(b) provides in part, that when the court finds that the property was not taken by necessity for a public use or purpose in a manner compatible with the greatest public good and least private injury:

the court shall enter the judgment necessary to (1) compensate the persons entitled to it for the period during which the property was in the possession of the plaintiff, (2) *recover for the plaintiff any award paid to any person*, and (3) order the plaintiff to restore the property to the condition in which it existed at the time of the filing of the declaration of taking unless such restoration is impossible . . . . . [emphasis furnished]

Given the foregoing we think it clear that AS 09.55.460(b) militates against a finding of implied waiver from the withdrawal of money deposited in the registry of the court. Thus in the absence of an express waiver in the stipulation for withdrawal we conclude that the state should not prevail on its waiver argument.

8. This contention can be disposed of rather summarily. AS 09.55.450 states in pertinent part that:

the right of entry shall not be granted the plaintiff until after the running of the time for the defendant to file an objection to the declaration of taking or until after the hearing on any objection to the declaration of taking if the objection is made in the time allowed by law.

Thus, pursuant to AS 09.55.450 it is the objection which calls for the hearing. A motion for hearing with supporting affidavits is not required. See also paragraph X of the Notice of Filing Complaint in the case at bar in which the state informed the Coopers that:

If you file an objection to the State of Alaska's authority to take your property, or claim that the taking of your property is unnecessary, or that the taking is not for a public use, then the court will conduct a hearing to determine the authority and necessity for the taking.

9. In this regard the state argues, "It is clear from the testimony that when the State's appraiser learned of the building and helipad on the Coopers' property, it then notified the airport design staff, which reduced the project in order to avoid the helipad."

10. John Schultz, a designer employed by the Division of Aviation, admitted that he gave no consideration to the private injury resulting from the construction of the fence across the landing pattern for the helipad. (There was evidence that the Bell 212 helicopters using the helipad operated out of the helipad toward the runway at a low altitude when fully loaded.) Similarly the chief of airport design for the State Division of Aviation, James Rhode, stated that he did not consider the impact of the fence and airport access road on the property.

11. The state further argues that:

One of the dangers from the type of decision that has been made in this case is that projects will lose their integrity as each individual property owner can attack and adjust the project to suit the injury to each particular piece of property.

function of the project and without adding unreasonable costs to the project.[12]

■ Striking the ultimate balance is, of course, a decision to be made by the condemnor. A court should not substitute its judgment for that of the condemnor, but may set aside the condemnor's decision if it is "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law." *Moore v. State*, 553 P.2d 8, 34 n.12 (Alaska 1976), *quoting Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415–16, 91 S.Ct. 814, 823, 28 L.Ed.2d 136, 153 (1971). The standard of arbitrariness was clearly satisfied in this case, since critical information concerning the injury which the landholder would suffer was not considered.[13]

Since the state in the case at bar failed to consider the impact of the taking on the Coopers' property, we affirm the superior court's order vacating, pursuant to AS 09.-55.460(b), the declaration of taking in the case at bar.[14]

AFFIRMED.

**12.** Both the Arizona and California eminent domain statutes contain provisions requiring that the proposed project be located in the manner that will be most compatible with the greatest public good and the least private injury. *See* Cal.Civ.Proc. Code § 1240.030 (West Supp. 1980); Ariz.Rev.Stat. § 12–1115. In construing this language the Arizona Supreme Court stated:

> This provision of our eminent domain statute was adopted from California and has been interpreted by the courts of that state to require a balancing of the greatest public good and the least private injury in locating land for condemnation. . . . It therefore follows that evidence on the part of [the condemnee], relative to the 'uses' she had made and intended to make of the land in question may have been material on the question of her 'private injury' in the ultimate balancing of the greatest public good and the least private injury.

*Chambers v. State*, 82 Ariz. 279, 312 P.2d 155, 159 (1957) (citations omitted).

**13.** It is well established that where an agency fails to consider an important factor in making its decision, the decision will be regarded as arbitrary. *See Hanlay v. Mitchell*, 460 F.2d 640, 646 (2d Cir. 1972) ("it is 'arbitrary and capricious' for an agency not to take into account all relevant factors in making its determination"); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136, 153 (1971) ("to make this finding [whether an administrative decision is arbitrary, capricious, etc.] the court must consider whether the decision was based on a consideration of the relevant factors . . .").

**14.** Implicit in this holding is our rejection of the state's argument that divestiture is an inappropriate remedy in the circumstances and that the appropriate remedy would be for the court to reduce the size of the property taken pursuant to AS 09.55.300.