**SHIP CREEK HYDRAULIC SYNDI-CATE, a partnership, Petitioner,**

v.

**STATE of Alaska, DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES, Respondent.**

No. 7822.

Supreme Court of Alaska.

June 29, 1984.

Ronald L. Baird, Kemppel, Huffman & Ginder, Anchorage, for petitioner.

Donald W. McClintock and Richard J. Todd, Asst. Attys. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for respondent.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

Until 1953, the Territory of Alaska was required to file a complaint and obtain a court order for possession before it could use a landowner's property for a highway project. Sections 57–7–1 to 57–7–23 ACLA 1949. In 1953, the Territorial Legislature authorized what has become known as the "quick-take" procedure, in which title to the property passes upon the filing of a "declaration of taking" and such matters as the necessity for a taking and the fair market value of the property taken are left for later determination. Ch. 90, SLA 1953. Twenty-two years later, this Court held that under the declaration of taking statute landowners had only limited rights to object to the authority and necessity for takings. *Arco Pipeline Co. v. 3.60 Acres, More or Less*, 539 P.2d 64, 70 (Alaska 1975). Responding to our decision, the Legislature amended the "quick-take" statute, requiring a condemning authority to state as part of its declaration of taking that "the property is taken by necessity for a project located in a manner which is most compatible with the greatest public good and the least private injury." AS 09.55.-430(7). If this statement proves to be untrue, the superior court is expressly empowered to divest the condemnor of title or possession. AS 09.55.460(b).

In *State v. 0.644 Acres, More or Less*, 613 P.2d 829 (Alaska 1980) (*"Cooper"*) and *State v. 2.072 Acres, More or Less*, 652 P.2d 465 (Alaska 1982) (*"Hodges"*), we held that these statutory amendments required individualized consideration of the private injury a public project would cause each private landholder, and that in some cases this individualized consideration would have to include approximate cost estimates of alternatives to the proposed taking. By

amending the statute, we concluded, the Legislature had altered the summary nature of the "quick-take."

How cumbersome this procedure may now be became apparent when Ship Creek Hydraulic Syndicate, petitioner here, sought review of the superior court's refusal to set aside the taking of its Anchorage property. Ship Creek's objections had precipitated a four-day hearing, during which engineers debated the merits of the State's decision about where to locate the A–C Couplet, an Anchorage highway project. We granted Ship Creek's petition in order to decide whether by summarizing their decisions in a "decisional document" condemning authorities might be able to simplify and rationalize the inquiries Alaska statutes and this Court's decisions have imposed upon them.

## I.

■ A "decisional document," to quote *SEACC v. State*, 665 P.2d 544, 549 (Alaska 1983), "reflects ... the facts and premises on which [a] decision ... [is] based." Thus the one-sentence "statement" which AS 09.-55.430(7) requires a declaration of taking to include does not qualify as a decisional document. A decisional document should indicate "the determinative reason for the final action taken";[1] "although detailed findings of fact are not required, the statement of reasons should inform the court and the [private party] of both the grounds of decision and the essential facts upon which the [agency's] inferences are based."[2] If serious objections are raised in relation to action the agency proposes, the decisional document should respond to them.[3]

As we said in *SEACC*,

A decisional document, done carefully and in good faith, serves several salutary purposes. It facilitates judicial review by demonstrating those factors which were considered. It tends to ensure careful and reasoned administrative deliberation. It assists interested parties in determining whether to seek judicial review. And it tends to restrain agencies from acting beyond the bounds of their jurisdiction.

(Footnotes and citations omitted.) *SEACC v. State*, 665 P.2d at 549. Moreover, explanations of administrative action have "intrinsic" as well as "instrumental" value.[4] As one commentator has put it:

The very essence of arbitrariness is to have one's status redefined by the state without an adequate explanation of its reason for doing so. [footnote, citing Kafka's The Trial, omitted] It is crucial that this value be seen as distinct from the concern about administrative accuracy—the interest in correcting wrong decisions. Obviously, the two are related since a reasoned explanation is a means of assuring the individual that the facts in his case are correctly perceived. But I would insist that the respect for individual autonomy that is at the foundation of procedural due process imposes a distinct obligation upon the government to explain fully its adverse status decision.

(Footnote omitted.) Rabin, *Job Security and Due Process: Monitoring Administrative Discretion Through a Reasons Requirement*, 44 U.Chi.L.Rev. 60, 77–78 (1976).

■ Some decisions are relatively unimportant, and the trouble of explaining them in writing could possibly outweigh any value a written explanation would have. *See* 3 K. Davis, Administrative Law Treatise § 14.26 at 120 (2d ed. 1980). In other cases, the legislature may have specified the procedures an administrative agen-

---

**1.** *Camp v. Pitts,* 411 U.S. 138, 143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106, 111 (1973).

**2.** *Dunlop v. Bachowski,* 421 U.S. 560, 573–74, 95 S.Ct. 1851, 1860–61, 44 L.Ed.2d 377, 390 (1975).

**3.** *See* Pedersen, *Formal Records and Informal Rulemaking,* 85 Yale L.J. 38, 75–76 (1975). The precise form a decisional document takes depends on how the document is used.

**4.** We borrow these terms from Professor Tribe. *See* L. Tribe, American Constitutional Law, § 10–7 at 502–03 (1978).

cy must follow, and in order to avoid trespassing on the legislative domain courts should refrain from imposing their own notions of proper procedure on the agency. *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978). Furthermore, due process does not require an agency to explain and defend every decision it makes. *Cf. Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 417, 91 S.Ct. 814, 824, 28 L.Ed.2d 136, 154 (1971).

Nevertheless, if a statute requires reasoned decisions, and the legislature has not expressly or by implication limited judicial authority to decide how to review administrative action, courts may and should require agencies to explain their decisions. *See, e.g., Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975); K. Davis, *supra*, § 14.26 at 121. We think that "quick-take" decisions deserve explanation, and that the necessary explanations should be made in a decisional document filed contemporaneously with the declaration of taking.

As the facts of this case demonstrate, the questions our statutes require the taker to answer are complex. AS 09.55.460(b) forces condemning authorities to weigh public good against private injury with respect to each parcel they condemn. *Cooper*, 613 P.2d at 832–33. The taker must evaluate alternatives to its action. *Hodges*, 652 P.2d at 466–67. It is left to the condemnor to decide how to strike the balance. *Cooper*, 613 P.2d at 833. Yet we believe that the appropriate balance will be easier to strike if the taker summarizes its conclusions in a decisional document.

A requirement that an agency be judged on a single, comprehensive, detailed justification for its decision, prepared at the time when it promulgates a rule, would have several potentially beneficial effects. It would force the various subunits within the agency to pursue their differences on questions of fact, interpretation or policy until they could be resolved. It would force the agency to choose between alternative data, theories and methodologies and create a coherent case upon which scrutiny by the courts can be focused.

Pedersen, *supra* note 3, at 73. In our view the decisions the Legislature has required condemnors to make will be better decisions if they are explained in a contemporaneous decisional document.

The document will also aid property owners in understanding why their property, and not someone else's, is being taken. In some cases this fact alone justifies the use of a decisional document. In others, in which property owners must decide whether or not to contest the authority and necessity for a taking, a reasoned explanation will help them determine whether or not to seek judicial review. If a document shows that the condemnor has wholly ignored a project's impact on a particular parcel, a court's review need not be inordinately detailed. If, on the other hand, the document discloses that the taker has carefully considered impacts and alternatives, the affected property owner might well decide not to contest the authority and necessity for the taking. The point, of course, is that property owners should not have to wait for and endure a long and expensive hearing in order to ascertain whether their objections have merit. Decisional documents would help property owners make rational choices.

Opposing a requirement that it prepare "quick-take" decisional documents, the Department of Transportation and Public Facilities (DOT/PF) notes that, although the Legislature has set out the procedures a condemnor must follow to use a "quick-take", the statutes do not mention any decisional document requirement. It follows, DOT/PF claims, that courts should not burden it with additional procedural requirements. For this proposition DOT/PF relies on *Vermont Yankee*. But *Vermont Yankee* did not hold that courts could not aid their own review of agency actions by requiring agencies to prepare a comprehensible record. *See generally* K. Davis, supra, § 14.24 at 112–16. A decisional document organizes the record in

ways that make it more easily reviewable. Moreover, the statutory scheme at issue here is far less detailed and comprehensive than was the federal Administrative Procedure Act at issue in *Vermont Yankee.* We thus conclude that *Vermont Yankee* is not controlling and that this court possesses the authority to require condemnors to file decisional documents in conjunction with their use of declarations of taking.

█ DOT/PF further contends that as a practical matter a decisional document requirement would impose unwarranted burdens on it as well as on other condemnors. Its first objection concerns cost. Preparing decisional documents, it says, would be expensive. But DOT/PF's notion of expense seems to depend on its entirely unsupported claim that it would have to file a separate decisional document for each parcel it takes. We see no reason why in a large project one document cannot summarize the greatest public good/least private injury calculus that has been made with respect to a number of properties. The fact that each property owner must receive individualized consideration does not mean that each property owner must receive a separate individualized explanation of the taking. One document, summarizing the taker's reasoning, is sufficient.

DOT/PF's arguments about expense might have been more persuasive if it had tried to estimate the probable cost of preparing decisional documents. Instead, it has chosen to emphasize the fact that most takings do not generate objections to their authority and necessity. Taking a narrow view of a decisional document's purpose, DOT/PF argues that most of the documents it might have to prepare would be useless. Whatever the cost of preparing them, it concludes, that expense would be wasted. We reject the argument for three reasons. First, it ignores the fact that decisional documents improve decision-making. Second, it fails to recognize that *Cooper* and *Hodges,* and the statutes they construe, require DOT/PF to follow the statutes in all cases, not just those which generate objections. Each taking must receive

individualized consideration, and we reject any implication that DOT/PF may ignore the statutes' requirements when it thinks that its failure to observe them will not be examined in court. Finally, the fact that few property owners object to takings may be due in large part to the fact that if they object they face elaborate hearings like the one which took place below. If the process is simpler, legitimate objections will be easier to make.

At oral argument counsel for DOT/PF noted that making objections easier would impose additional costs on his client. This may be true, but in our view the statutes, not a decisional document requirement, would be responsible for this additional burden on DOT/PF and other condemnors. In its 1976 amendments the Legislature provided that a condemnor could be divested of title and possession if it failed to take property in a way that combined the greatest public good with the least private injury. Forcing property owners to go through lengthy and expensive hearings does make a condemnor's position more secure: even if it has failed to comply with the statute, the burdens of proving this failure may force some property owners to acquiesce in unnecessary takings. We see no reason to reinforce the condemnor's practical advantages in these matters by approving a system which makes decisions difficult to challenge.

Our decision does not, in our view, greatly intrude on a taker's ability to condemn property. We will not impose detailed requirements as to how decisional documents must be structured or as to what they must contain. So long as a decisional document adequately reflects the facts and premises on which a decision is based, *SEACC,* 665 P.2d at 549, it will enable property owners and reviewing courts to determine whether or not the agency has complied with the statute. This is the document's most important purpose and we will, at least in the first instance, allow takers to decide how this purpose should be implemented in the decisional document. *See* Byse, *Vermont Yankee and the Evolution of Administra-*

*tive Procedure: A Somewhat Different View,* 91 Harv.L.Rev. 1823, 1826, 1828 (1978) (on matters about which agencies know more than courts, courts should defer to agency expertise).[5]

## II.

■ We must now decide how these general observations affect the case before us. It is true that "[o]n numerous occasions, fairness has required that at least the litigants who successfully urged adoption of a new rule in this court be afforded relief, though the new rule was otherwise given only prospective application." *Plumley v. Hale,* 594 P.2d 497, 505 (Alaska 1979). But an examination of Ship Creek's Petition for Review shows that a remand to DOT/PF would not help the superior court rule on Ship Creek's basic contentions. In the instant case, requiring the agency to prepare a decisional document would serve no useful purpose.

Ship Creek's substantive objections go to four specific issues. It contends that the superior court should not have considered evidence relating to post-taking negotiations and proposals. A decisional document filed with the declaration of taking would have allowed the superior court to separate the original justifications for the taking from post-hoc rationalizations. However, no such document was filed, and a document prepared on remand would almost certainly reflect the fact that Ship Creek suggested alternatives to the taking after the declaration was filed. The same reasoning applies to Ship ·Creek's second substantive objection. A contemporaneous decisional document would have helped the superior court determine whether or not the inquiries *Cooper* and *Hodges* require had in fact been made. But a decisional document prepared at this stage, more than a year after the taking, would inevitably be affected by the arguments the parties have advanced on appeal. Again, remanding to DOT/PF so that it could prepare a decision-

al document would not help resolve this litigation.

A new decisional document would be even less helpful in deciding Ship Creek's two other objections. The condemnee's due process arguments would not be addressed in a decisional document. Nor would a document aid the superior court in deciding legal issues relating to the burden of proof on appeal. Although a decisional document would have simplified this litigation, requiring one now would only complicate it. We therefore decline to apply the rule we adopt today to the case before us.

■ Our holding is one of first impression. DOT/PF has relied on its belief that state law did not require decisional documents, and forcing it to file such documents with respect to condemnations it has already made would impose a substantial burden on it. Nor do we think that retroactive application of a decisional document requirement would serve that requirement's purpose. As this case's facts show, a decisional document is most useful as a document which separates an agency's actual reasons for making a decision from the legal arguments it later advances to justify it. If we were to force condemnors to file retroactive decisional documents with respect to properties that have already been taken, those documents inevitably would reflect all legal arguments that had been made in the takings' defense. Decisional documents will not be required, then, with respect to any declaration of taking filed before the publication of this opinion. *See Plumley v. Hale,* 594 P.2d at 503.

## III.

■ Four days of hearings convinced the superior court that the taking of Ship Creek's property was legally justified. We see no reason to disturb that conclusion. The record reflects DOT/PF's careful consideration of each alternative Ship Creek proposed. It shows that the agency was properly concerned with safety, feasibility,

---

**5.** We would, however, expect decisional documents to describe a condemnor's efforts, if any, to obtain comments from property owners, and to show what consideration the condemnor gave to these comments.

and community desire to improve pedestrian facilities on the right-of-way. Ship Creek's argument that DOT/PF changed the rationale for its decision after filing a declaration of taking ignores the fact that the change, if there was a change, was made to respond to a new alternative suggested by Ship Creek. The condemnee's due process and burden of proof arguments are equally meritless. Our decision to simplify these types of condemnation proceedings by requiring agencies to use decisional documents in no way implies that this particular hearing led to an incorrect result.

The judgment below is AFFIRMED.