Kelly RUCKLE, Appellant,

v.

ANCHORAGE SCHOOL DISTRICT and State of Alaska, Department of Education and Early Development, Appellees.

No. S–10422.

Supreme Court of Alaska.

Feb. 27, 2004.

---

**1031**

Robert K. Stewart, Jr., Davis Wright Tremaine LLP, Anchorage, for Appellant.

Howard S. Trickey and Matthew Singer, Jermain Dunnagan & Owens, P.C., Anchorage, for Appellee Anchorage School District.

G. Ken Truitt, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellee State of Alaska, Department of Education and Early Development.

Before: MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Kelly Ruckle challenged the decision of the Anchorage School District to grant its school transportation contract to First Student, Inc. and sought a declaration voiding the state's regulation governing pupil transportation contracts. The superior court dismissed with prejudice Ruckle's claims against both the school district and the state for lack of subject matter jurisdiction and denied her request to file an amended complaint. We agree with the superior court that Ruckle does not have citizen-taxpayer standing with respect to her claims against the district. However, we conclude that the superior court erred in refusing to grant Ruckle leave to file an amended complaint. Because we remand on these grounds, we find it unnecessary to determine whether the superior court's dismissal with prejudice was appropriate.

## II. FACTS AND PROCEEDINGS

On October 4, 2000 the Anchorage School District (ASD), seeking a school bus company to transport its students, issued a Request for Transportation Proposals (RFP). It received five bids for the five-year contract. According to Ruckle, the lowest and only responsive bid was submitted by Laidlaw Transit, Inc., ASD's incumbent provider of school bus service. The second lowest bidder was First Student, Inc. Despite the alleged deficiencies in its bid,[1] ASD certified First Student's bid as responsive. ASD permitted First Student to match Laidlaw's bid price and decided that an award to First Student would be in the district's best interest. A notice of intent to award the school bus contract to First Student was issued on January 19, 2001.

Laidlaw then instituted an action against ASD and First Student, asking the court, among other things, to invalidate First Student's proposal and enjoin ASD from contracting with them.[2] Laidlaw requested declaratory and injunctive relief, and money damages. On May 18, 2001 Superior Court Judge Peter A. Michalski issued an order converting Laidlaw's action to an administrative appeal, since many of the claims in Laidlaw's complaint were based on the administrative decisions of ASD. Judge Michalski bifurcated and stayed any claims which could not be reached as part of the administrative appeal and halted all discovery until the appeal could be resolved.

Laidlaw then approached Kelly Ruckle to determine if she would be interested in commencing litigation in this matter. Kelly Ruckle was at that time employed as a secretary by Laidlaw's law firm, Hartig Rhodes Hoge & Lekisch and was also a taxpayer in the Municipality of Anchorage and the mother of two children who attended ASD schools and who rode school buses operated by First Student. She was referred to Davis Wright Tremaine LLP for representation. On July 23, 2001 Ruckle filed a complaint against ASD and the State of Alaska, Department of Education and Early Development (state), alleging nearly all of the same claims against ASD as Laidlaw had. However, whereas Laidlaw did not challenge any of the state's

---

1. Ruckle claims that First Student's bid was missing the following items:

    1. Acknowledgments of Addenda 1–5.
    2. A signed Non–Collusion Affidavit and non-discrimination statement.
    3. The names and resumes of persons who would be primarily responsible for managing the pupil transportation services.
    4. Certifications that arrangements had been made for the purchase, lease, or rent of facilities necessary to provide pupil transportation services, that necessary financing was available and that necessary facilities would be available in time to perform the contract.
    5. Samples of the driver route notebook for regular and Special Education routes, the driver and attendant policy manual, and the dispatch procedure manual.
    6. Job descriptions for all positions required under the contract and estimated amounts of time operations personnel would spend on each job function, including any responsibilities not directly related to providing service under the contract.
    7. An outline of the First Student's accident prevention program tailored to driving conditions encountered in Anchorage, Alaska.
    8. The wage and benefit scale to be applied to drivers and attendants.

2. *See Laidlaw Transit, Inc. v. Anchorage Sch. Dist.*, Case No. 3AN–01–04545 CI.

conduct, Ruckle argued that one of its regulations, 4 Alaska Administrative Code (AAC) 27.085,[3] violates the State Procurement Code, AS 36.30, that it was adopted without proper statutory authority, and that it constitutes a standardless delegation of authority. In addition, while Laidlaw sought money damages, Ruckle requested only declaratory and injunctive relief. Ruckle's complaint was assigned to Superior Court Judge Mark Rindner.

Instead of filing an answer, ASD filed a motion to dismiss, which was later joined by the state, which argued that Ruckle did not have citizen-taxpayer standing and that the complaint should therefore be dismissed under Alaska Civil Rule 12(b)(1) for lack of subject matter jurisdiction.[4] Ruckle opposed, arguing that she had standing as a citizen and taxpayer and as a member of the class of persons the procurement statute was designed to protect.

Judge Rindner granted the motion to dismiss, which prompted Ruckle to request reconsideration. She argued that she should be permitted to litigate her claims against the state because Laidlaw was not pursuing those claims, and therefore they would likely evade review. Judge Rindner denied Ruckle's motion for reconsideration, but before receiving notice of the denial, Ruckle filed an amended complaint in which she alleged that she had interest-injury standing. ASD asked the court to strike Ruckle's amended complaint because it was filed without leave of the court. ASD also argued that Ruckle should not be permitted to re-allege citizen-taxpayer standing since her first complaint had already been dismissed for lack of such standing. Ruckle opposed ASD's motion, contending that she had timely filed her amended complaint pursuant to Alaska Civil Rule 15(a) and that, in the absence of an Alaska rule barring the filing of an amended pleading after dismissal but before entry of judgment, she should be permitted to amend her complaint as a matter of course. In response, ASD maintained that, even if it might be permissible for Ruckle to amend her complaint, she should be required to request leave of the court and such leave should be denied since amendment would be futile and she had failed to take advantage of earlier opportunities to do so.

Ruckle then moved for leave to supplement her opposition to ASD's motion to strike, informing the court that her daughter had been in an accident involving a First Student bus on December 6, 2001, thereby clarifying her standing status and demonstrating "the legitimate concerns she has concerning the safety of the school buses operated by First Student under the contract awarded it by the ASD." Judge Rindner granted ASD's motion to strike the amended complaint and advised Ruckle that, if she still believed she had interest-injury standing, she could file a complaint seeking relief appropriate to such a claim. On the same day, February 4, 2002, Judge Rindner entered final judgment in the matter, dismissing with prejudice Ruckle's complaint for lack of subject matter jurisdiction.

Finally, Ruckle filed a motion seeking to amend the judgment, arguing that the court should have dismissed her complaint without prejudice so as to allow her to file a new complaint without running afoul of *res judicata*. That motion was also denied and Ruckle appealed.

## III. STANDARD OF REVIEW

We review *de novo* a superior court's decision to dismiss a complaint for lack of subject matter jurisdiction.[5]

Whether an amended complaint may be filed after dismissal without leave of the court is a question of law. "We scrutinize questions of law under a *de novo* or indepen-

---

3. 4 AAC 27.085 provides the requirements for competitive pupil transportation proposals and, among other things, lists the criteria that must be contained in requests for proposals, the procedures districts shall use in the certification process and selection of a proposer, and the circumstances under which a proposer may move for reconsideration of the board's determination.

4. Alaska Civil Rule 12(b)(1) sets out the procedure by which a party may request dismissal for lack of subject matter jurisdiction.

5. *Andrews v. Alaska Operating Engineers–Employers Training Trust Fund*, 871 P.2d 1142, 1144 (Alaska 1994).

dent judgment standard of review. When reviewing a question of law, it is our 'duty to adopt the rule of law that is most persuasive in light of precedent, reason and policy.' "[6]

■ We review under the abuse of discretion standard a superior court's decision to deny a plaintiff leave to file an amended complaint[7] and a superior court's decision to dismiss a complaint with prejudice.[8] "We will reverse a ruling for abuse of discretion only when left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling."[9]

## IV. DISCUSSION

### A. The Superior Court Did Not Err in Dismissing Ruckle's Complaint Against ASD for Lack of Citizen–Taxpayer Standing.

■ In dismissing Ruckle's original complaint against ASD, the superior court found that Ruckle could not satisfy the requirements of citizen-taxpayer standing and, therefore, could not pursue her claims against ASD under the theory advanced in the original complaint. Ruckle had requested declaratory and injunctive relief, both of which the superior court could grant pursuant to AS 22.10.020.[10] As the basis for her complaint, Ruckle alleged that she "is a resident of Anchorage, Alaska and a taxpayer in the municipality of Anchorage." ASD immediately moved to dismiss, arguing that Ruck-

le had not demonstrated sufficient interest-injury or citizen-taxpayer standing and, therefore, that the court should dismiss her action for lack of subject matter jurisdiction.

We have held that "all that is required of a complaint seeking declaratory relief is a simple statement of facts demonstrating that the superior court has jurisdiction and that an actual justiciable case or controversy is presented."[11] Under our case law, the "actual case or controversy" language encompasses a number of more specific reasons for not deciding cases, including lack of standing, mootness, and lack of ripeness.[12] At issue in this case is whether Ruckle has standing to pursue her claims against ASD and the state. We have observed that "[s]tanding in our state courts is not a constitutional doctrine; rather, it is a rule of judicial self-restraint based on the principle that courts should not resolve abstract questions or issue advisory opinions. The basic requirement for standing in Alaska is adversity."[13]

We have recognized two forms of standing: interest-injury and citizen-taxpayer.[14] In her original complaint, Ruckle only relied on citizen-taxpayer standing. Under Alaska law, to establish such standing a taxpayer or citizen need only show that the case in question is "one of public significance" and the plaintiff is "appropriate in several respects."[15] This "[a]ppropriateness has three main facets: the plaintiff must not be a 'sham plaintiff' with no true adversity of interest; he or she must be

**6.** *Jackson v. Power,* 743 P.2d 1376, 1379, n. 5 (Alaska 1987) (citation omitted) (quoting *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

**7.** *Betz v. Chena Hot Springs Group,* 742 P.2d 1346, 1348 (Alaska 1987).

**8.** *DeSalvo v. Bryant,* 42 P.3d 525, 527 (Alaska 2002).

**9.** *Id.* at 527–28 (quoting *Peter Pan Seafoods, Inc. v. Stepanoff,* 650 P.2d 375, 378–79 (Alaska 1982)).

**10.** Under AS 22.10.020(c), superior courts may issue injunctions and "all other writs necessary or proper to the complete exercise of its jurisdiction." Alaska Statute 22.10.020(g) provides:

In case of an actual controversy in the state, the superior court, upon the filing of an appropriate pleading, may declare the rights and legal relations of an interested party seeking

the declaration, whether or not further relief is or could be sought. The declaration has the force and effect of a final judgment or decree and is reviewable as such. Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against an adverse party whose rights have been determined by the judgment.

**11.** *Jefferson v. Asplund,* 458 P.2d 995, 999 (Alaska 1969).

**12.** *Bowers Office Prods., Inc. v. Univ. of Alaska,* 755 P.2d 1095, 1096 (Alaska 1988).

**13.** *Trustees for Alaska v. State,* 736 P.2d 324, 327 (Alaska 1987) (citation omitted).

**14.** *Id.*

**15.** *Id.* at 329.

capable of competently advocating his or her position; and he or she may still be denied standing if 'there is a plaintiff more directly affected by the challenged conduct in question who has or is likely to bring suit.' " [16]

The superior court focused on the third factor used to determine Ruckle's "appropriateness" as a plaintiff—whether another plaintiff is more directly affected by the action in question and has brought suit or is likely to bring suit—and explicitly declined to rule on Ruckle's fulfillment of the remaining two appropriateness requirements. Because Laidlaw had already raised nearly identical claims against ASD, the superior court concluded:

> Ruckle clearly fails the third aspect of the "appropriate" plaintiff test. There is another plaintiff more directly affected by the challenged conduct in question who *has* brought suit. This court need not hypothetically question whether another plaintiff exists who may bring forth suit against ASD. Laidlaw filed a lawsuit against ASD almost six months prior to Ruckle's lawsuit. Laidlaw was the former provider of transportation for ASD and is more directly affected by ASD's awarding the contract to First Student.

According to the court, "Ruckle lacks standing as a citizen-taxpayer because another plaintiff more directly affected by the complained of conduct, Laidlaw, has already filed a virtually identical lawsuit concerning the subject matter of this case. Because Ruckle lacks standing, the court lacks subject matter jurisdiction and cannot address Plaintiff's claims."

Ruckle argues that the superior court erred in its determination that she was not the most appropriate plaintiff to bring this suit. She contends that, because citizens comprise the class specifically protected by the public procurement system, the "most appropriate plaintiff" in any challenge to the award of a public contract should be selected from that class of people. In support of her argument, Ruckle cites several cases which hold that all members of the public, not the bidders, are the intended beneficiaries of the competitive public bidding system. In *McBirney & Associates v. State,*[17] this court explained that the purposes of the competitive public bidding system are:

> to prevent fraud, collusion, favoritism, and improvidence in the administration of public business, as well as to insure that the [state] receives the best work or supplies at the most reasonable prices practicable.
>
> ... [T]he requirement of public bidding is for the benefit of property holders and taxpayers, and not for the benefit of the bidders; and such requirements should be construed with the primary purpose of best advancing the public interest.[18]

By virtue of her position as both a citizen and a taxpayer, Ruckle argues that she will best represent the broad set of interests common to other citizens and taxpayers of Anchorage, while Laidlaw will represent only its own economic interests.

■ Ruckle also cites a number of cases from other jurisdictions which she argues support the proposition that taxpayers, rather than bidders, should be granted standing to challenge flaws in public bidding systems. These cases do support the proposition that citizen-taxpayers have standing to challenge the results of public bidding systems.[19]

---

**16.** *Baxley v. State,* 958 P.2d 422, 428 (Alaska 1998) (citing *Trustees for Alaska v. State,* 736 P.2d at 329–30).

**17.** 753 P.2d 1132 (Alaska 1988).

**18.** *Id.* at 1135–36 (quoting *Gostovich v. City of West Richland,* 75 Wash.2d 583, 452 P.2d 737, 740 (1969)) (alterations in original). *See also Aloha Lumber Corp. v. Univ. of Alaska,* 994 P.2d 991, 998 (Alaska 1999).

**19.** *See, e.g., Ewy v. Sturtevant,* 962 P.2d 991, 995 (Colo.App.1998) (stating that "[t]he public bidding process, however, is for the protection of the public, not the bidders" and as such "bid-

ders[ ] have no standing to challenge the propriety of an award of a public contract to another bidder"); *Black Ash Servs., Inc. v. DuBois Area Sch. Dist.,* 764 A.2d 672, 674 (Pa. Commw.Ct.2000) (holding that "mere disappointed bidder to a public contract does not have standing to challenge its award" and requiring that "[t]o have standing, the bidder must be an aggrieved taxpayer of the municipality awarding the contract"); *On–Point Tech. Sys., Inc. v. Commonwealth,* 753 A.2d 911, 914 (Pa. Commw.Ct.2000) (distinguishing between action brought by disappointed bidder against state under Procurement Code and one filed by taxpayer in equity); *Sloan v. Sch. Dist.,* 342 S.C. 515, 537

However, none of these cases involve a situation, such as the one at bar, where both the bidder and a citizen-taxpayer have filed suit on the same issue, and three of the cases hail from jurisdictions where bidders are only permitted to challenge the bid procedures of municipalities in which they are also municipal taxpayers.[20] This is not the law in Alaska. Here, unsuccessful bidders may administratively appeal bid decisions and may pursue bid-related claims against a state agency in court.[21] Furthermore, ASD does not argue that Ruckle could never establish standing based on her citizen-taxpayer status, but rather it contests the idea that both Ruckle's and Laidlaw's claims should be permitted to proceed at the same time.

ASD also contends that Ruckle's claim that, as a citizen and taxpayer, she is a more appropriate plaintiff than Laidlaw "misconstrues the test for citizen-taxpayer standing, and relies on the unsupportable presumption that an ordinary citizen is more affected by the award of the District's $45 million transportation contract than is the incumbent contractor who lost the contract." ASD compares Laidlaw's request for money damages and its right to "recover money for bid preparation costs if it can show that the government agency failed to consider its bid fairly and honestly" to Ruckle's claim for declaratory and injunctive relief, and maintains

that it is untenable that Ruckle could be more directly affected by the outcome of this litigation than Laidlaw. Furthermore, ASD questions Ruckle's claim that she represents different and broader interests than Laidlaw, and argues that "[e]very one of Ruckle's alleged defects in the procurement process were previously alleged by Laidlaw [and][t]he relief that Ruckle seeks is the same relief that Laidlaw seeks."

Finally, Ruckle argues that she should be permitted to proceed with her lawsuit despite Laidlaw's pending appeal because the issues of "whether the First Student proposal was nonresponsive and whether the ASD's best interest determination was flawed" might evade review in Laidlaw's administrative appeal. Ruckle claims that under 4 AAC 27.085(e),[22] a finding that a bid is nonresponsive can only be challenged by that bidder, not by a competing bidder, such as Laidlaw. In addition, Ruckle argues that 4 AAC 27.085(g)[23] limits challenges by unsuccessful bidders to fraud or mathematical errors and does not permit a bidder to contest an award on the basis that a best interests determination was flawed. However, while 4 AAC 27.085(e) and (g) limit the bases upon which a bidder can move the school board for reconsideration, a bidder can seek judicial review of the board's decision by the superior court

S.E.2d 299, 303 (App.2000) (stating that "[t]he taxpayers of Greenville County have a direct interest in the proper use and allocation of tax receipts by the District" and therefore may challenge "the District's failure to abide by the competitive sealed bidding requirements in its procurement code").

**20.** *See Ewy*, 962 P.2d at 995 (noting that Colorado law does not provide bidders, as bidders, with standing to challenge award of public contract to another bidder); *Black Ash Servs., Inc.*, 764 A.2d at 674 (observing that to have standing in Pennsylvania, bidder must be municipal taxpayer).

**21.** *See Lower Kuskokwim Sch. Dist. v. Found. Servs., Inc.*, 909 P.2d 1383, 1384 (Alaska 1996) (considering challenge by unsuccessful bidder for school transportation contract); *King v. Alaska State Hous. Auth.*, 633 P.2d 256, 263 (Alaska 1981) (holding that government agency enters implied contract with bidder to consider bids honestly and fairly and that bidder may sue to enforce this contract).

**22.** 4 AAC 27.085(e) outlines the procedures to be used by a school district in certifying bids for competitive pupil transportation proposals as responsive or nonresponsive to the request for proposals. Under subsection (5), "a proposer whose proposal was certified as nonresponsive may petition the board in writing for reconsideration."

**23.** 4 AAC 27.085(g) provides:

Within five working days following the district school board's offering a contract, a proposer whose proposal was not accepted may petition the board, in writing, for reconsideration of its action. Petitions for reconsideration are limited to the following grounds, which must be specified: (1) fraud or duress by the district school board or a proposer; or (2) error of the district school board in calculating dollar amounts. The aggrieved proposer shall deliver the petition to all other proposers. The district school board shall decide the scope and form the reconsideration will take, except that all responsive proposers must be given the opportunity to be heard on the petition.

under Alaska Rule of Appellate Procedure 602(a)(2).[24]

The analysis of ASD and the superior court is compelling. Not only is it clear that another party has brought suit to vindicate these interests, but under the circumstances we agree that Laidlaw is the more appropriate plaintiff in this case. As the superior court notes, we have encouraged trial courts to evaluate the appropriateness of plaintiffs on a case-by-case basis. In this situation, we agree that allowing Ruckle to proceed with her claims against ASD would be unnecessarily duplicative given Laidlaw's enormous economic incentive and the fact that it has already filed suit. Because Laidlaw has raised similar, if not identical, claims against ASD in its lawsuit, and because Ruckle has been unable to demonstrate a likelihood that these issues will evade review during the course of the administrative appeal, we affirm the superior court's decision to dismiss Ruckle's complaint against ASD for lack of citizen-taxpayer standing.

### B. After Dismissal Ruckle Was Not Entitled To Amend Her Complaint Without Leave of the Court.

After entry of the court's order dismissing her claims against ASD and the state, Ruckle filed an amended complaint. Several times prior to filing, Ruckle informed the court that she planned to exercise her right under Civil Rule 15(a) [25] to file an amended complaint.[26] The amended complaint differed from the original complaint only in that, for the first time, Ruckle alleged interest-injury standing.

Judge Rindner granted ASD's motion to strike Ruckle's amended complaint. He stated that he would proceed as though Ruckle had requested leave to file an amended complaint, but he denied Ruckle's motion because the court dismissed the case for lack of subject matter jurisdiction. Judge Rindner noted that "[i]f Ruckle believes she has a claim based on interest-injury standing she may file a separate complaint seeking relief appropriate to that claim."

■ Ruckle argues that the superior court erred in striking her complaint, because she should have been permitted to amend her complaint once as a matter of course without seeking leave of the court since a responsive pleading had never been served as required by Civil Rule 15(a). Whether Rule 15(a) permits amendment without leave of the court after an order of dismissal has been entered is a question of first impression in Alaska.

Essentially, Ruckle argues that, because a responsive pleading was never filed, we should liberally construe Rule 15(a) to allow her to amend her complaint without leave of the court within a reasonable time of service of the order dismissing the complaint. The parties agree that there is no Alaska rule explicitly addressing this issue and that the federal courts are divided as to whether the right to amend a pleading under Rule 15(a) without leave of the court survives a dismissal order. Three main approaches to this question have been adopted by other courts and were recently summarized in an Eastern District of Pennsylvania decision, *United States v. Union Corp.*[27]

---

**24.** *See also Lower Kuskokwim Sch. Dist.,* 909 P.2d 1383 (Alaska 1996) (concerning appeal of school board's transportation contract).

**25.** Civil Rule 15(a) provides in relevant part:
A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

**26.** In her opposition to ASD's motion to dismiss, Ruckle stated in a footnote that, should the court fail to find that she had established citizen-taxpayer standing, she was reserving her right to amend her complaint to allege facts showing the necessary foundation for interest-injury standing. Ruckle again noted her intention to file an amended complaint during the hearing on the motion to dismiss. In the superior court's order dismissing Ruckle's complaint for lack of subject matter jurisdiction, the court noted that Ruckle had reserved her right to amend her complaint at a later point in time.

**27.** 194 F.R.D. 223, 229–31 (E.D.Pa.2000).

Under the first approach, which has been applied in some Ninth Circuit cases, "the right to amend once as a matter of course never terminates, even if the original pleading is dismissed by the district court, until a responsive pleading is filed." [28] As the *Union Corp.* court explained, "[t]his approach is based on a rigid, literal reading of the language of Rule 15(a) that the right to amend continues until a responsive pleading is filed, regardless of what might happen prior to the filing of that responsive pleading; because the rule is silent as to the effect of an intervening dismissal of that pleading, such action had no effect on the right to amend." [29] Neither party supports the adoption of this approach.

The second approach, which has been followed in the majority of circuits, is that the right to amend without leave terminates upon the entry of an order of dismissal. [30] ASD champions this rule because it gives substantial effect to a lower court's determination that a claim should be dismissed, it prevents a party from repleading a claim which has already been disposed of, and it "encourages litigants not to sleep on their rights and waste judicial resources by waiting until after dismissal to amend their complaints."

Ruckle prefers the third approach, in which the right to amend survives the granting of a motion to dismiss but is extinguished by the entry of judgment. [31] This approach has been adopted in certain situations by the Seventh and Ninth Circuits and "is based on principles of finality—only after the entire action has been dismissed in a final and appealable order should the right to amend terminate, at which point the plaintiff either may appeal or seek leave of the district court

to reopen the case so she may pursue an amended complaint." [32] Ruckle argues that this approach best comports with the plain language of Rule 15(a), that it would be most consistent with the superior court's order in this case recognizing Ruckle's reservation of her right to file an amended complaint, and that it is most closely aligned with Alaska's approach to finality for purposes of appeal. Finally, Ruckle argues that "the rule which [she] advances promotes even more consistency and certainty than [the rule] adopted by certain of the federal circuits which rely upon the heavily criticized test of whether a particular order is a final decision which ends litigation on the merits."

There are strong arguments for each interpretation of Rule 15(a). However, we believe that the majority rule—the one espoused by ASD—is the one which best reflects our longstanding concerns with consistency, fairness, and finality, and which accords appropriate deference to the superior court. Adoption of this rule would allow an opposing party to rely on the finality of a dismissal, while providing an opportunity to respond to a request to amend should the circumstances so require. It would also facilitate an efficient use of resources, require parties to exercise their rights sooner rather than later, and prevent the unnecessary over extension of litigation. While this rule would undoubtedly restrict the plaintiff's right to amend without leave, we have long held that leave to amend should not usually be difficult to obtain. [33] Thus, where plaintiffs have demonstrated valid reasons for amending a pleading, they will be permitted to do so. We believe that adoption of this rule strikes the appropriate balance among these competing

---

**28.** *Id.* at 229 (citing *Mayes v. Leipziger*, 729 F.2d 605, 607 (9th Cir.1984); *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1520 (9th Cir.1983)).

**29.** *Id.* at 229.

**30.** *Id.* at 229–30 (citing *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir.1994); *Acevedo–Villalobos v. Hernandez*, 22 F.3d 384 (1st Cir.1994); *Whitaker v. City of Houston, Tex.*, 963 F.2d 831, 835 (5th Cir.1992); *Dorn v. State Bank of Stella*, 767 F.2d 442, 443 (8th Cir.1985); *Czeremcha v. Int'l Ass'n of Machinists and Aerospace Workers*, 724 F.2d 1552, 1556 (11th Cir.1984); *Elfenbein v. Gulf & Western Indus., Inc.*, 590 F.2d 445, 448 n. 1 (2d Cir.1978)).

**31.** *Id.* at 230–31.

**32.** *Id.* at 231 (citing *Camp v. Gregory*, 67 F.3d 1286, 1289 (7th Cir.1995); *Worldwide Church of God, Inc. v. State of Cal.*, 623 F.2d 613, 616 (9th Cir.1980)).

**33.** *See, e.g., Estate of Thompson v. Mercedes Benz, Inc.*, 514 P.2d 1269, 1271 (Alaska 1973).

concerns, and we therefore adopt it. We must accordingly reject Ruckle's argument that she was entitled to file her amended complaint without seeking leave of the court.

## C. The Superior Court Erred in Denying Ruckle Leave To File an Amended Complaint.

Ruckle sought to file an amended complaint in order to demonstrate an alternate basis for asserting standing. In her amended complaint, she alleged:

> Ruckle has standing to bring this action because she is the mother of two children who attend schools operated by the ASD. Her oldest child currently rides school buses contracted for by the ASD, the younger child will do so next year. She has suffered injury to cognizable interests by the acts and omissions of the ASD and Department as alleged herein, including, but not limited to, the facts that the ASD awarded the school bus contract to a proposer which failed to comply with the requirements of RFP2000–605 Request for Pupil Transportation Proposals, especially those relating to safety, and because that award was not in the best interests of the user population.

The superior court did not explain why it denied Ruckle leave to amend her complaint. Ruckle argues that this denial without explanation constitutes an abuse of discretion. Absent a determination that amendment would be futile, Ruckle maintains, the superior court should have granted her the leave it assumed she had requested.[34]

We have long held that leave to amend a pleading should be freely given and that, absent a showing that the amendment would have resulted in injustice, a trial court will be found to have abused its discretion in denying a motion to amend.[35] In *Betz v. Chena Hot Springs Group*,[36] we endorsed the reasons set forth by the United States Supreme Court in *Foman v. Davis*[37] for denying the amendment of a complaint. Specifically, the *Foman* Court instructed that:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." [38]

ASD focuses its argument on the alleged futility of amendment, maintaining that Ruckle should not be permitted to amend her complaint because her allegations of interest-injury standing are too generalized to survive a motion to dismiss. In response, Ruckle maintains that she has set forth sufficient facts to survive a motion to dismiss. As Ruckle explains:

> Ruckle's cognizable *interest* is that of assuring the safety of her children as they ride transportation provided by the ASD to and from school each day. The *injury* she suffered was the reasonable apprehension that her daughter was being placed at risk because the ASD awarded the school bus contract to a proposer, First Student, which failed to comply with numerous requirements of the RFP, most particularly those relating to safety. The fact that her daughter was subsequently involved in two separate school bus accidents, sustaining injuries in the second, only reinforced the reasonableness of Ruckle's apprehensions. The *relief* Ruckle sought, a declaration voiding the contract awarded by the ASD to First Student, would fully remediate the injury she suffered by eliminating the risk that her children will continue to be trans-

---

34. Judge Rindner stated in his order that he would proceed as though Ruckle had requested leave to file an amended complaint.

35. *Estate of Thompson,* 514 P.2d at 1271 (determining that trial court erred in denying leave to amend where there had been no showing of injustice by opposing party).

36. 742 P.2d 1346, 1348 (Alaska 1987).

37. 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

38. *Id.* at 182, 83 S.Ct. 227.

ported to and from school by a contractor which failed to meet the minimum safety and other operator requirements set forth in the RFP.

(Emphasis in original, footnote and citations omitted.)

Our jurisprudence has recognized interest-injury standing in a variety of contexts. In *Moore v. State*,[39] we set out our expansive interpretation of standing:

> Whether a party has standing to obtain judicial resolution of a controversy depends on whether the party has a sufficient personal stake in the outcome of the controversy. In our recent decision of *Wagstaff v. Superior Court, Family Division*, 535 P.2d 1220, 1225 (Alaska 1975), we described this requirement in terms of "injury-in-fact," and explained that its purpose is to assure the adversity which is fundamental to judicial proceedings.[40]

At issue in *Moore* was whether a group of commercial fisherman and the owner of a lodge could bring a challenge against the State of Alaska and the lessees of tracts in or near Kachemak Bay regarding the legality of the sale of certain offshore oil and gas leases in the bay.[41] While defendants maintained that the plaintiffs' interest in the transaction in question was merely incidental or indirect, the plaintiffs argued that they would be adversely affected by oil exploration in the bay.[42] Agreeing with the plaintiffs, we determined that, because the plaintiffs' livelihoods depended on the biological productivity of the bay, they did in fact have a sufficient interest in the sale of the leases to establish standing.[43]

In *Johns v. Commercial Fisheries Entry Commission*,[44] we considered whether a group of fisherman who made their living seining for bait and roe herring in Southeast Alaska could challenge a regulation limiting the maximum number of limited entry permits the Commercial Fisheries Entry Commission (CFEC) would issue.[45] The CFEC claimed that the plaintiffs had not established standing to bring such a challenge since they could not point to any actual or inevitable injury suffered as a result of the maximum number regulation.[46] Because the question whether each plaintiff would receive a permit was unresolved, and each plaintiff retained an interim use permit at the time the suit was filed, the CFEC argued that the plaintiffs might never suffer any injury because of the regulation.[47] Plaintiffs countered that the threatened loss of their right to enter the fishery constituted a sufficient injury to justify standing.[48] Explaining that "[a] party need not wait for anticipated harm to materialize before bringing an action to protect his rights," we endorsed the finding of standing based on anticipated future harm.[49] To instead adopt a rule of inevitability, as urged by the CFEC,

> would establish an unwarranted distinction between possible and certain harm for purposes of determining standing; such a rule would deny standing to parties who could demonstrate at the filing only the possibility of harm. That approach is not consonant with the thrust of Alaska law. We think it bad law and bad policy to approve a rule which shuts the courthouse doors until, in certain situations, it may be too late to obtain meaningful judicial relief.[50]

We echoed these sentiments in *Trustees for Alaska v. State*,[51] in which we observed that the adverse interest required to establish interest-injury standing

**39.** 553 P.2d 8 (Alaska 1976).

**40.** *Id.* at 23 (citation omitted).

**41.** *Id.* at 14.

**42.** *Id.* at 23–24.

**43.** *Id.* at 24–25.

**44.** 699 P.2d 334 (Alaska 1985).

**45.** *Id.* at 335–36.

**46.** *Id.* at 336–38.

**47.** *Id.* at 337.

**48.** *Id.*

**49.** *Id.* at 338.

**50.** *Id.*

**51.** 736 P.2d 324 (Alaska 1987).

may be economic, or it may be intangible, such as an aesthetic or environmental interest. The degree of injury to the interest need not be great; " '[t]he basic idea ... is that an identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation.' " [52]

Based on the expansive definition of adversity set out in earlier cases, we agree with Ruckle that amendment of her complaint in this case would not be futile. Ruckle alleged that she has two children who are or will be attending Anchorage schools and riding the buses of the transportation provider selected by ASD. Ruckle therefore has an interest in who that provider is. She also alleged that the selected school transportation provider, First Student, failed to provide an outline of its accident prevention program, as required by the RFP. While Ruckle may never suffer injury as the result of ASD's selection, the possibility that she might, in the form of harm to her children, and the possibility that ASD's selection process may have eliminated a "safer" transportation option, are of interest to Ruckle. Because her allegations do not on their face appear futile, we believe the superior court abused its discretion in denying Ruckle leave to amend her complaint. We therefore reverse the court's decision and remand for Ruckle's amended complaint to be reinstated.[53]

### D. Remaining Issues

Ruckle also maintains that the superior court erred in dismissing her complaint with prejudice, since a dismissal for lack of subject matter jurisdiction is not a dismissal on the merits and therefore does not act as a bar to a subsequent action on the same issue. Because we remand for the court to grant Ruckle leave to file an amended complaint, we find it unnecessary to resolve this question.

Finally, in response to concerns raised by ASD and the state during the course of this case, we note that the superior court may consider other means of approaching this litigation. For example, the court might choose to authorize discovery on ASD's "stalking horse" theory, consolidate Ruckle's claims with the Laidlaw litigation, or stay the present case until Laidlaw's claims have been resolved. We recognize that such decisions lie within the discretion of the superior court and, therefore, express no opinion as to which alternative approach the court ought to follow, if any.

## V. CONCLUSION

Because we agree that a more appropriate plaintiff has already challenged ASD's actions, we AFFIRM the decision of the superior court to dismiss Ruckle's complaint against ASD inasmuch as it was based on citizen-taxpayer standing. We AFFIRM the superior court's determination that Ruckle was not entitled to amend her complaint without leave of the court after the complaint had been dismissed, but we REVERSE the court's denial of leave to amend a complaint alleging interest-injury standing. We REMAND for further proceedings consistent with this opinion.

FABE, Chief Justice, not participating.

---

**52.** *Id.* at 327 (citations omitted) (alterations in original).

**53.** This conclusion makes it unnecessary to reach Ruckle's contention that the superior court erred in dismissing for lack of citizen-taxpayer standing her original claim against the state. The amended complaint alleges interest-injury standing as to both the school district and the state. Because Ruckle's allegations in the amended complaint are sufficient to demonstrate her standing as to the state, it is unnecessary for us to consider whether the first complaint was sufficient in that regard.