NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| WILLIAM PARLIER; McHENRY DETECTIVE AGENCY, LLC; and PARLIER INVESTMENT, LLC, | ) ) ) ) |
| | Supreme Court No. S-17783 |
| Appellants, | Superior Court No. 3KN-18-00281 CI |
| v. | MEMORANDUM OPINION AND JUDGMENT* |
| CAN-ADA CRUSHING & GRAVEL CO., d/b/a Crooked Creek Guide Service, Cabins & RV Park, | No. 1908 – July 20, 2022 |
| Appellee. | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Jennifer K. Wells, Judge.

Appearances: Todd Young, Anchorage, for Appellants. Peter R. Ehrhardt, Ehrhardt, Elsner & Cooley, Kenai, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

# I. INTRODUCTION

A corporation sued the owners of corporate shares for failure to pay annual fees during a two year period. The defendants included two LLCs, a man, and his daughter. The man filed numerous counterclaims alleging mismanagement of corporate property

---

\* Entered under Alaska Appellate Rule 214.

and two claims alleging fraudulent transfer of assets. After lengthy litigation, the superior court determined that the man's fraud claims had been the subject of prior lawsuits and dismissed them. Next, the court concluded that the man did not own corporate shares during the relevant period and dismissed his remaining claims because he lacked standing. Finally, the court awarded the corporation enhanced attorney's fees under Alaska Civil Rule 82. The man appeals. We agree with the superior court that the man lacked standing to pursue his counterclaims and that an enhancement for vexatious conduct was warranted under Rule 82(b)(3)(G). Therefore we affirm the superior court's decisions.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Sockeye Salmon, Inc. owns vacation property in Kasilof. In 2008 it divided its property into small parcels for summer fishing cabins or trailers. Instead of selling the parcels of property, Sockeye sold shares of corporate stock giving the stock owners rights of possession and occupancy to specific parcels. Sockeye recorded a Declaration of Covenants, Conditions, and Restrictions obligating stock owners to pay annual assessment and maintenance fees for their assigned parcels. Sockeye entered into an assignment and collection agreement with CAN-ADA Crushing & Gravel Company d/b/a Crooked Creek Guide Service, Cabins and RV Park (CAN-ADA) giving CAN-ADA the ability to pursue remedies against delinquent stock owners.

Rachel Parlier owned two shares of Sockeye stock, Shares #1 and #17. In March 2017 she transferred those shares to Parlier Investments, LLC which transferred the shares to McHenry Detective Agency, LLC. Rachel's father, William Parlier, is the sole member of McHenry and Parlier Investments. The $400 annual fees for Shares #1 and #17 were not paid in 2017 or 2018 amounting to a $1,600 delinquency.

**B.      Proceedings**

In April 2018 CAN-ADA filed a collection action in superior court to recover $1,600 in unpaid fees against William Parlier, Rachel Parlier, Parlier Investments, McHenry, and Sockeye Shares #1 and #17.[1]  Parlier filed a lengthy answer and alleged twenty counterclaims on behalf of himself and the two LLCs.

Parlier's pleadings recited a history of two prior superior court cases:  a 2014 case and a 2017 case.  The pleadings further stated that the 2014 case resulted in a large monetary judgment to two parties against Action Milling, Inc.  In 2017 the same two parties filed a new case against CAN-ADA, alleging that Action Milling had fraudulently conveyed its assets to CAN-ADA to avoid paying the 2014 judgment. Parlier claimed he had an interest in the judgment against Action Milling and had moved to join the 2017 case against CAN-ADA as a substitute plaintiff, but the court denied his motion.

The earlier cases featured heavily in Parlier's counterclaims against CAN-ADA.  Although the majority of the twenty claims alleged mismanagement of Sockeye property, two claims alleged a fraudulent and criminal transfer of assets from Action Milling to CAN-ADA.

The superior court ordered that a default judgment would be entered against Parlier Investments and McHenry and all counterclaims would be dismissed unless an attorney appeared on their behalf within 10 days of the order.[2]  Parlier petitioned for our review.  We affirmed the superior court and held that AS 22.20.040 required "[a] limited

---

[1]      We refer to Rachel by her first name to differentiate her from her father, William Parlier, whom we refer to as Parlier.  We intend no disrespect.

[2]      *See* AS 22.20.040 (requiring that "a corporation . . . shall appear by an attorney in all cases unless an exception to the corporation's appearance by an attorney has been explicitly made by law").

liability company [to] hire counsel for court litigation."[3]  Shortly afterward, CAN-ADA and Rachel settled, and the claims against her were dismissed.

The superior court set an evidentiary hearing in October 2019 specifically to hear evidence on:

> (i) The ownership and current status of Parlier Investments, LLC;
>
> (ii) The ownership and current status of McHenry Detective Agency, LLC;
>
> (iii) Information regarding creditors who currently have or may in the future have any claims against either Parlier Investments, LLC or McHenry Detective Agency, LLC;
>
> (iv) The current ownership of Shares #1 and #17 of Sockeye Salmon Inc.;
>
> (v) Any evidence of the present value of Shares #1 and #17 of Sockeye Salmon Inc.;
>
> (vi) A comprehensive breakdown of the assessment costs applied to Shares #1 and #17 of Sockeye Salmon Inc. between the years of 2016 and 2019 and the authority for the 15% interest rate applied to any unpaid assessments;
>
> (vii) An updated witness list from Mr. Parlier containing the names, addresses, and phone numbers [of] all proposed witnesses; and
>
> (viii) Any evidence pertaining to Mr. Parlier's counterclaims.

Parlier spent much of the evidentiary hearing describing the 2014 case against Action Milling and the 2017 case against CAN-ADA and arguing his interest in those two cases.  He also stated that he had helped Rachel quitclaim Sockeye Shares #1 and #17 to McHenry and would continue to litigate the case without an attorney because

---

[3]     *Parlier v. CAN-ADA Crushing & Gravel Co.*, 441 P.3d 422, 423 (Alaska 2019).

he had dissolved both of his LLCs and was no longer required to have one.

CAN-ADA responded by noting that Parlier had failed to introduce evidence that he had complied with the statutory requirements for winding up his LLCs. It introduced evidence that Rachel was the owner of the Shares #1 and #17 in 2017 and that they were transferred to McHenry in 2018. Finally CAN-ADA asked the court to dismiss Parlier's counterclaims.

The superior court entered a default judgment against Parlier Investments and McHenry. The court also dismissed without prejudice Parlier's counterclaims of criminal transfer and fraudulent sale of property because they were "already the subject matter of another suit before th[e] court" and there was no evidence that the proper parties had been served.

The court set a second evidentiary hearing to determine the amount of the final judgment and to allow Parlier to present evidence of standing to pursue his remaining counterclaims. Parlier again attempted to introduce evidence regarding the previous cases against Action Milling and CAN-ADA. He also repeated his assertion that he had dissolved his LLCs, but did not provide evidence that they had been wound up according to statute. After the second evidentiary hearing, the court issued an order explaining its intent to issue a final judgment. The court underscored its prior dismissal of Parlier's fraud claims:

> Despite the nature of the underlying claim, Mr. Parlier has repeatedly used this proceeding as a means to raise unrelated claims against the Plaintiffs, many of which have already been or were concurrently being addressed in two other cases before this Court, namely 3KN-14-01051CI and 3KN-17-00228CI. These claims are not relevant to the present action and have been adequately addressed in the aforementioned proceedings, to which Mr. Parlier was found not to be a proper party. As such, any claims pertaining to other cases before this Court were dismissed on October 30, 2019.

The court acknowledged that Parlier had "filed articles of dissolution for McHenry" but failed to "provide evidence that he complied with the proper winding up procedures."[4] Therefore the court found that Rachel was liable for the unpaid 2017 assessments and McHenry was liable for the unpaid 2018 assessments because they owned the Shares when the assessments were levied. The court also determined that Parlier did not have standing to pursue his counterclaims against CAN-ADA because he did not own the Shares in 2017 or 2018. The court noted that because Rachel had settled and a default judgment had been entered against McHenry, there were no remaining parties with standing to pursue the counterclaims and dismissed them.

The court subsequently considered CAN-ADA's request for an award of attorney's fees under Alaska Civil Rule 82(b)(2).[5] CAN-ADA requested an enhanced award under subsection (b)(3).[6] It enumerated several grounds for enhancing the award, including the unreasonableness of Parlier's counterclaims, his vexatious conduct, and the disproportionate amount of work his unreasonable claims had caused when compared with the amount at stake.[7]

After reviewing CAN-ADA's billing summaries, the court first determined that it would not consider any "fees attributed to Rachel Parlier." The court then determined that there were $46,196.58 in fees to be considered. The court found that

---

[4] *See* AS 10.50.410-.440 (stating the procedure for winding up LLCs).

[5] *See* Alaska R. Civ. P. 82 (providing standard schedule for attorney's fee award and enumerating grounds to vary award).

[6] Alaska R. Civ. P. 82(b)(3) (providing circumstances under which court may vary award for attorney's fees).

[7] *See* Alaska R. Civ. P. 82(b)(3)(F) (reasonableness of claims and defenses), (G) (vexatious or bad faith conduct), and (H) (relationship between amount of work performed and significance of matters at stake).

although CAN-ADA's "claim against Mr. Parlier did not result in a money judgment . . . [CAN-ADA] prevailed, not only against [McHenry] but against Mr. Parlier when the court dismissed his extensive counterclaims." On this basis, the court awarded attorney's fees under Rule 82(b)(2). The court also found that "although Mr. Parlier had some good faith concerns, he raised several claims for which he was unable to establish standing" and his "frequent discussion of unrelated cases and continued attempts to represent the LLCs, even after the Supreme Court's May 10, 2019 order affirming this Court's decisions, constituted vexatious conduct." The court concluded that "Mr. Parlier's actions [were] the primary reason why legitimate litigation of a $1,600 debt generated [$46,196.58] in attorney fees." The court therefore found that "a variation [was] warranted pursuant to Civil Rule 82(b)(3)" and awarded CAN-ADA 60% of its attorney's fees in the amount of $27,717.94.

Parlier appeals. He claims that the superior court erred by finding that he did not have standing to pursue his counterclaims. He also appeals the award of enhanced attorney's fees.

## III.   STANDARD OF REVIEW

"Whether a party has standing to sue is a question of law that we review de novo."[8] "We review an award of attorney's fees under Rule 82 for abuse of discretion and will not disturb the award on appeal unless it is 'arbitrary, capricious, manifestly unreasonable, or improperly motivated.' "[9] But when "an enhanced fee award under Rule 82(b)(3)(G) 'calls into question [a party's] litigation conduct and the potential merits of [the party's arguments and defenses], we assess de novo the legal and factual

---

[8]   *Keller v. French*, 205 P.3d 299, 302 (Alaska 2009).

[9]   *Boiko v. Kapolchok*, 426 P.3d 868, 874 (Alaska 2018) (quoting *Kollander v. Kollander*, 400 P.3d 91, 95 (Alaska 2017)).

viability of [the party's claims] and review relevant findings of fact for clear error.' "[10]

## IV. DISCUSSION

### A. The Superior Court Did Not Err By Holding That Parlier Did Not Have Standing To Pursue His Counterclaims.

Parlier argues that the superior court "clearly erred in holding [that he] lacked standing to pursue the counterclaims." His argument largely focuses on his ability to pursue his asserted interest in the judgment against Action Milling. But this argument is misplaced; the counterclaims regarding that judgment were dismissed because they were the subject of other lawsuits, not because Parlier lacked standing to bring them.[11]

And Parlier did not have standing to pursue his remaining counterclaims related to the management of the Sockeye property. "Standing is a 'rule of judicial self-restraint based on the principle that courts should not resolve abstract questions or issue advisory opinions.' "[12] To establish standing, the plaintiff "must demonstrate . . . a 'sufficient personal stake' in the outcome of the controversy and 'an interest which is

---

[10] *Keenan v. Meyer*, 424 P.3d 351, 356 (Alaska 2018) (alterations in original) (quoting *Herring v. Herring*, 373 P.3d 521, 528 (Alaska 2016)).

[11] Parlier also argues that the superior court misinterpreted the facts surrounding the assignment of the money judgment against Action Milling from the original parties of the case to Parlier. Specifically, he asserts that "[t]he trial court believed that the document transferring the judgment did not give the assignee the right to sue to collect the judgment." But the trial court in this case did not interpret any facts regarding the assignment of the money judgment in this case — it simply dismissed the claims related to the judgment because they were the subject of a different suit.

[12] *Keller*, 205 P.3d at 302 (quoting *Ruckle v. Anchorage Sch. Dist.*, 85 P.3d 1030, 1034 (Alaska 2004)).

adversely affected by the complained-of conduct.' "[13] The superior court found that Parlier did not own Shares #1 and #17 during 2017 and 2018 — Rachel and McHenry did. Parlier therefore did not have a sufficient personal stake in the outcome of CAN-ADA's collection suit to establish standing. And although Parlier asserted he dissolved McHenry, he never presented the necessary evidence to the superior court to establish this fact. The superior court did not err by finding that Parlier lacked standing to pursue the counterclaims.

B. **The Superior Court Did Not Err By Awarding Enhanced Attorney's Fees.**

Parlier argues that the court erred by enhancing the attorney's fee award to CAN-ADA under Rule 82(b)(3).[14] He argues there was no showing that he prevented CAN-ADA from litigating on an equal playing field, and therefore the court erred when it found that he had engaged in "vexatious conduct."[15]

The superior court must generally award a prevailing party that did not recover a money judgment after resolving the case without trial 20% of its actual attorney's fees.[16] Under certain circumstances the court may vary the award; among

---

[13]    *Id.* at 304 (footnote omitted) (first quoting *Ruckle*, 85 P.3d at 1040; and then quoting *Alaskans for a Common Language, Inc. v. Kritz*, 3 P.3d 906, 915 (Alaska 2000)).

[14]    Alaska R. Civ. P. 82(b)(3) (providing circumstances under which court may vary award for attorney's fees).

[15]    Parlier does not challenge the superior court's finding that his actions also warranted an enhanced award under Rule 82(b)(3)(F) and (H). *See* Alaska R. Civ. P. 82(b)(3)(F) (reasonableness of claims and defenses) and (H) (relationship between amount of work performed and significance of matters at stake).

[16]    Alaska R. Civ. P. 82(b)(2).

them is if a litigant engaged in "vexatious or bad faith conduct."[17]

Parlier asserts that there was not a clear showing that his conduct prevented CAN-ADA from litigating on an equal plane, and therefore the enhancement was unwarranted. As support for this assertion, Parlier cites our statement in *Gallant v. Gallant* that "[c]onduct justifying an increased award must be such that the parties are prevented from litigating the action on an equal plane."[18] But *Gallant* was a divorce case[19] and we have highlighted the "paramount importance [of] parties [in divorce actions] be[ing] able to litigate on a 'fairly equal plane.' "[20] This case is not a divorce; the economic considerations involved in divorce matters are not present here. And we have often approved enhanced fees under Rule 82 in other civil matters without requiring the superior court to make specific findings regarding parties' ability to litigate on an equal plane.[21]

We have repeatedly recognized that the "trial court is 'in the best position to determine whether a party's behavior was excessively litigious or in bad faith.' "[22]

---

[17]     Alaska R. Civ. P. 82(b)(3)(G).

[18]     945 P.2d 795 (Alaska 1997) (quoting *Kowalski v. Kowalski*, 806 P.2d 1368, 1373 (Alaska 1991)).

[19]     *Id.* at 797-98.

[20]     *Tomal v. Anderson*, 426 P.3d 915, 928 (Alaska 2018) (quoting *Sanders v. Barth*, 12 P.3d 766, 768 (Alaska 2000)).

[21]     *See, e.g.*, *Sykes v. Lawless*, 474 P.3d 636, 647 (Alaska 2020) (holding that superior court did not abuse its discretion by enhancing fee award under Rule 82(b)(3)(G) where litigant "had 'added unnecessary levels of complexity,' used 'bad faith litigation tactics,' and 'filed multiple repetitive motions,' many of which 'were convoluted and difficult to read.' ").

[22]     *Keenan v. Meyer*, 424 P.3d 351, 361 (Alaska 2018) (quoting *Reid v.*
(continued...)

Here, the superior court found that "Parlier's frequent discussion of unrelated cases and continued attempts to represent the LLCs, even after the Supreme Court's . . . order affirming this Court's decisions, constituted vexatious conduct." The record supports these factual findings. Even after the court dismissed the counterclaims relating to the judgment against Action Milling, Parlier continued his attempts to litigate those claims. Nor did Parlier present evidence that he had fully complied with the statutory process of winding up his LLCs, despite the court's attempt to ascertain the status. Given that Parlier continually tried to litigate matters that were not before the court and refused to provide evidence that his LLCs had been properly wound up, the court's finding that Parlier's conduct was "excessively litigious" or "vexatious" was not clearly erroneous.[23]

## V.    CONCLUSION

We AFFIRM the superior court's orders dismissing the counterclaims and enhancing attorney's fees.

---

[22]     (...continued)
*Williams*, 964 P.2d 453, 461-62 (Alaska 1998)).

[23]     Parlier also argues that the superior court abused its discretion when it enhanced the award of attorney's fees because the court did not warn him, a self-represented litigant, that vexatious conduct could lead to an enhanced award. While we have held that "the trial judge should inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish," *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987), we conclude that the court was not required to warn Parlier that his conduct could be considered vexatious and result in an enhanced fee award. *See Bauman v. State, Div. of Fam. & Youth Servs.*, 768 P.2d 1097, 1099 (Alaska 1989) (holding that "[t]he Alaska Rules of Civil Procedure have been promulgated for the specific purpose of giving fair and reasonable notice to all parties of the appropriate procedural standards" and limiting the amount of direction courts are required to give pro se litigants).